*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 26, 2019

Plaintiff-Appellee,

v

No. 340541
Wayne Circuit Court
LC No. 17-003509-01-FC

KELLIE NICHOLE STOCK,

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions of reckless driving causing death, MCL 257.626(4); operating a motor vehicle while intoxicated causing death, MCL 257.625(4)(a); operating a motor vehicle while license suspended, revoked, or denied, causing death, MCL 257.904(4); first-degree fleeing and eluding, MCL 257.602a(5); second-degree fleeing and eluding, MCL 257.602a(4)(a); reckless driving causing a serious impairment of a body function, MCL 257.626(3); operating a motor vehicle while intoxicated causing a serious impairment of a body function, MCL 257.625(5)(a); and operating a motor vehicle while license suspended, revoked, or denied, causing a serious impairment of a body function, MCL 257.904(5). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 19 to 50 years' imprisonment for each of her convictions. The prosecution concedes that no evidence was introduced that defendant's license had been suspended, revoked, or denied, so we reverse her convictions under MCL 257.904(4) and (5) and need not discuss those charges further. We affirm defendant's remaining convictions and sentences; and we remand for entry of an amended judgment of sentence consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a fatal motor vehicle accident that occurred on March 20, 2017, at the intersection of Woodward Avenue and State Fair Avenue in Detroit, Michigan. At the time of the accident, defendant was allegedly driving recklessly while she had cocaine in her body and lacked a valid driver's license. The accident resulted in the death of Bennie Sims, who was the

driver of another vehicle involved in the accident, and serious injuries to Classie Butler, who was a passenger in the vehicle operated by defendant.

At trial, Detroit Police Officer Bradley Donegan testified that, while working undercover, he saw defendant drive a gray Dodge Intrepid the wrong way on a one-way street. Because Officer Donegan was in an unmarked vehicle, he directed Detroit Police Officer Sadie Howell and Detroit Police Officer Donte Jenkins, who were nearby in a semimarked police vehicle, to effectuate a traffic stop of defendant. Officer Howell and Officer Jenkins activated the police lights and siren of their vehicle in an attempt to stop defendant's vehicle on Woodward, but defendant fled at excessive speeds. Officer Howell and Officer Jenkins pursued defendant with their police lights and siren activated. Officer Donegan followed behind Officer Howell and Officer Jenkins.

Multiple eyewitnesses observed defendant's vehicle traveling at an excessive speed along Woodward. Butler, the passenger in the vehicle driven by defendant, testified that defendant said that an "undercover cop car" was behind them. Butler asked to be let out of the vehicle because she was scared about how fast defendant was driving, but defendant then drove faster. Officer Donegan testified that, at some point, Officer Howell and Officer Jenkins attempted to disengage from the pursuit because of the heavy traffic on Woodward. Defendant eventually drove through a red light at the intersection of Woodward and State Fair, striking a pickup truck driven by Sims. Sims died in the accident, and Butler was seriously injured. Defendant was taken to the hospital after the accident, and pursuant to a search warrant, police obtained a toxicology report showing that defendant had a cocaine metabolite in her urine.

After defendant was convicted and sentenced, this appeal ensued. In addition, defendant filed in the trial court a motion for a new trial and a request for a *Ginther*[1] evidentiary hearing. After holding a *Ginther* hearing, the trial court denied defendant's motion for a new trial. Defendant later filed in this Court a motion to remand the case to the trial court to expand the record regarding claims of new evidence and to move for a new trial. This Court denied the motion to remand "for failure to persuade the Court of the necessity of a remand at this time[]" but "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v Stock*, unpublished order of the Court of Appeals, entered February 6, 2019 (Docket No. 340541).

In her brief on appeal, defendant asserts that she received ineffective assistance of counsel, that the trial court improperly instructed the jury, that the prosecutor engaged in misconduct, that the evidence was insufficient to support her convictions, that the trial court improperly admitted a corrected toxicology report, that the trial court improperly precluded her from introducing evidence that Officers Howell and Jenkins were disciplined for conducting the vehicle chase, and that she is entitled to a new trial because she recently obtained Detroit Police Department internal memo referring to the vehicle driven by Officers Howell and Jenkins as "unmarked." In her Standard 4 brief,[2] defendant presents further argument that she received

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] See Supreme Court Administrative Order 2004-6, Standard 4.

ineffective assistance of counsel, that the prosecutor committed misconduct, and that she was improperly precluded from introducing evidence that Officers Howell and Jenkins were disciplined. She also argues that Officers Howell and Jenkins lacked probable cause to stop her vehicle and had not been acting in their official capacities when they did so, that her rights were violated because Officers Howell and Jenkins invoked their Fifth Amendment rights against self-incrimination, and that several statutes are unconstitutional.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

We first address defendant's arguments, in her brief on appeal and in her Standard 4 brief, that she received ineffective assistance of counsel. We do not agree.

Defendant has the "heavy burden" of disproving the presumption that she received effective assistance of counsel. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). "To prove that [her] defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). To establish prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted). "The defendant has the burden of establishing the factual predicate of [her] ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). Defense counsel is afforded "wide discretion in matters of trial strategy." *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013). "[T]he defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy." *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004).

First, defendant contends in both her brief on appeal and in her Standard 4 brief that defense counsel failed to conduct a reasonable and adequate investigation of all of the charges that defendant faced and improperly focused on the charge of second-degree murder, MCL 750.317. We disagree.

Second-degree murder was the most serious charge defendant faced. An essential element of second-degree murder is that the defendant acted with malice. *People v Bergman*, 312 Mich App 471, 487; 879 NW2d 278 (2015). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* (quotation marks and citation omitted). Defendant contends that defense counsel inappropriately argued that she acted negligently rather than intentionally or wantonly. However, the fact that a death occurred was not disputed, so counsel properly urged the jury to reject the "grand criterion" that distinguished murder from any other kind of killing. See *People v Mesik (On Recon)*, 285 Mich App 535, 545-546; 774 NW2d 857 (2009) (quotation omitted). A trial strategy may be sound irrespective of its success. *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996). Here, counsel's strategy was not only eminently reasonable, but in fact successful at obtaining an acquittal on the second-degree murder charge.

Defendant's contention that counsel was unconcerned about her other charges is utterly disproven by the vigorous defense the record shows counsel to have provided at trial. Among other matters, defense counsel in fact presented arguments disputing the existence of causation during closing argument. Defendant has thus failed to establish the factual predicate of this ineffective assistance claim. *Douglas*, 496 Mich at 592. Defendant also fails to articulate what other investigation counsel should have performed. We will not do so on her behalf. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

Defendant next contends in her appeal brief that defense counsel should have sought to suppress her toxicology report on the ground that the affidavit for the search warrant failed to establish probable cause to believe that defendant may have been intoxicated. We disagree. The affiant described some aspects of defendant's high-speed driving, the fact that her vehicle had been reported as stolen the previous month, and defendant's disregard for traffic control. "In reviewing a magistrate's decision to issue a search warrant, this Court must evaluate the search warrant and underlying affidavit in a common-sense and realistic manner." *People v Darwich*, 226 Mich App 635, 636-637; 575 NW2d 44 (1997). "Probable cause to issue a search warrant exists where there is a substantial basis for inferring a fair probability that contraband or evidence of a crime will be found in a particular place." *People v Kazmierczak*, 461 Mich 411, 417-418; 605 NW2d 667 (2000) (quotation marks omitted).

Defendant correctly observes that the affidavit does not specifically state that defendant may have been intoxicated, but it does state that her toxicology report was needed for prosecution; her suspected intoxication is a reasonable inference. The affidavit does not state that her car was swerving or that drugs or drug paraphernalia were found in the car. Defendant offers no reason why such averments are necessary, nor do we believe they are. Considering the averments together and using common sense, a substantial basis existed for inferring a fair probability that evidence of a crime would be found in defendant's toxicology records. In any event, the affidavit at least contained sufficient indicia of probable cause for an executing officer to have a good-faith belief that the warrant was valid. See *People v Goldston*, 470 Mich 523, 525-526, 540-541; 682 NW2d 479 (2004); *United States v Leon*, 468 US 897, 923; 104 S Ct 3405; 82 L Ed 2d 677 (1984). Therefore, a motion to suppress would not have succeeded. "Counsel is not ineffective for failing to advance a meritless position or make a futile motion." *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014).[3]

Defendant next argues that defense counsel was ineffective for failing to object to the admission of the toxicology results on the basis of purported gaps in the chain of custody. However, any gaps in the chain of custody normally affect only the weight of the evidence rather than its admissibility; a perfect chain of custody is not required to admit evidence, and gaps do not require automatic exclusion of the evidence. *People v White*, 208 Mich App 126, 132-133; 527 NW2d 34 (1994). Therefore, such an objection to the admissibility of the toxicology results would have been futile given that gaps in the chain of custody go to weight rather than

---

[3] Given the analysis set forth above, it is unnecessary to address the prosecutor's alternative suggestion that suppression was not required in light of MCL 257.625a(6)(e).

admissibility. *Id*. Defendant makes a related argument that the prosecutor failed to provide the toxicology report itself to the defense at least two days before trial, as required by MCL 257.625a(8). However, defendant concedes that a copy of the toxicology report with the name "Mississippi" was given to the defense at least two days before trial. The copy containing defendant's name was provided at trial because the hospital reprinted the toxicology report, but it was the same toxicology report with the same identifying number for defendant. MCL 257.625a(8) refers to making the test *results* available at least two days before trial, which undisputedly occurred. Any motion or objection seeking exclusion of the toxicology report on either of these grounds would thus have failed, and defense counsel therefore was not ineffective for failing to advance a meritless position. *Henry*, 305 Mich App at 141.

Defendant next argues that defense counsel was ineffective for failing to argue that defendant only had a cocaine metabolite, as opposed to cocaine, in her system. Defendant relies on *People v Feezel*, 486 Mich 184, 204-212; 783 NW2d 67 (2010), in which our Supreme Court held that a marijuana metabolite called 11-carboxy-THC is not a schedule 1 controlled substance under MCL 333.7212 of the Public Health Code. The Court concluded in *Feezel* that "a person cannot be prosecuted under MCL 257.625(8) for operating a motor vehicle with any amount of 11-carboxy-THC in his or her system." *Feezel*, 486 Mich at 205. The holding in *Feezel* was limited to 11-carboxy-THC. A fair extrapolation of *Feezel* could be that any drug metabolite is not the drug itself, so the presence of a metabolite of a schedule 1 controlled substance in a person's body is not *per se* a violation of MCL 257.625(8). See *Feezel*, 486 Mich at 207-212. However, any such extrapolation is irrelevant here.

A drug metabolite effectively proves that the drug itself was ingested at some point. See *People v Derror (On Reconsideration)*, 268 Mich App 67, 72; 706 NW2d 451 (2005), rev'd in part on other grounds 475 Mich 316 (2006). In *Feezel*, our Supreme Court explained that 11-carboxy-THC was not itself intoxicating, and it correlated poorly with actual intoxication. *Feezel*, 486 Mich at 208-211. However, actual intoxication is irrelevant here, because "any amount of [an enumerated] controlled substance" in a driver's body a strict liability crime. MCL 257.625(8). We are not addressing in this matter whether cocaine metabolites are themselves scheduled substances, which we presume under *Feezel* they are not, but rather whether they are probative of the presence of cocaine.

We lack the kind of expert testimony and evidence that was provided in *Feezel* and *Derror*. See *Feezel*, 486 Mich at 208, 214-215. Defendant has merely provided a printout from a website suggesting that cocaine metabolites are similarly poorly correlated with actual intoxication. However, as explained above, actual intoxication is not the relevant inquiry. Defendant's printout refers to cocaine and its metabolites having predictable half-lives, as any other drug might ordinarily be expected to behave. Consequently, there appears to be a predictable relationship between cocaine and its metabolites. Critically, in *Feezel*, our Supreme Court explained that 11-carboxy-THC was remarkable, and possibly even unique, for being detectable *weeks* after all THC had long since passed out of a person's body. *Id*. at 215. It thus stands to reason that 11-carboxy-THC is poor evidence of THC. However, no evidence has been suggested to us that any drug other than THC is metabolized and excreted in such a potentially misleading manner.

Consequently, the presence of a cocaine metabolite is unambiguous proof that a person ingested cocaine at some point. Importantly, the presence of a cocaine metabolite in a person's urine remains sound inferential evidence that the person is under the influence of cocaine or has cocaine in their body, especially when combined with other evidence of impairment, such as driving the wrong way down a one-way street. The essential elements of a crime can be proved by circumstantial evidence and by drawing reasonable inferences from that evidence. *People v Martin*, 271 Mich 280, 340; 721 NW2d 815 (2006). The trial court determined at defendant's *Ginther* hearing that argument regarding cocaine metabolites would not likely have made a difference to the outcome of the trial. The trial court had the benefit of presiding over the trial and observing the demeanor of the witnesses. See *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881). We cannot find that the trial court clearly erred in making that determination. See *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We also cannot conclude that it was unsound trial strategy for counsel to avoid delving into potentially confusing and largely irrelevant technicalities, or to avoid attempting to extrapolate *Feezel* far beyond its scope. See *Dunigan*, 299 Mich App at 584; *Matuszak*, 263 Mich App at 58.

Defendant next contends that defense counsel was ineffective for failing to move for a directed verdict on the charges of operating a motor vehicle while license suspended, revoked, or denied, causing death, and operating a motor vehicle while license suspended, revoked, or denied, causing a serious impairment of a body function, and for failing to object to the trial court's jury instructions on the elements of those offenses. As noted at the outset of this opinion, we reverse those two convictions, so we need not address whether defense counsel was ineffective for failing to move for a directed verdict or to object to jury instructions on the elements of those offenses.

Defendant argues that defense counsel was ineffective for failing to object to alleged instances of prosecutorial misconduct. As we will discuss below, we find no such misconduct. Consequently, any objection would have been meritless, and the failure to do so cannot constitute ineffective assistance. *Henry*, 305 Mich App at 141.

In her Standard 4 brief, defendant contends that she received ineffective assistance of counsel because counsel did not challenge the prosecution calling Butler and Officer Donegan as witnesses. As we discuss further below, defendant cannot possibly have found Butler a surprise witness, and good cause existed to formally add Officer Donegan as a witness. Furthermore, Officer Donegan would have been merely a cumulative witness to Officers Jenkins and Howell if Officers Jenkins and Howell had not asserted their Fifth Amendment rights, making them unavailable. Defense counsel was not ineffective for recognizing that the trial court had ample basis to allow the prosecutor to call both Butler and Officer Donegan. MCL 767.40a "clearly vests the trial courts of this state with the discretion to permit the prosecution to amend its witness list at any time." *People v Callon*, 256 Mich App 312, 327; 662 NW2d 501 (2003). "Counsel is not ineffective for failing to advance a meritless position or make a futile motion." *Henry*, 305 Mich App at 141.

Defendant further argues in her Standard 4 brief that defense counsel was ineffective for failing to request a jury instruction, or to argue to the jury, that gross negligence of a victim suffices to break the causal link between the defendant's conduct and the victim's death. Defendant only offers a brief suggestion that Sims may have run a red light. In contrast, the trial

testimony indicated that it was defendant who ran a red light and was also speeding. Defendant does not identify any other record evidence suggesting that Sims engaged in any gross negligence, and we will not search for any on her behalf. *Kelly*, 231 Mich App at 640-641. In any event, our review of the record has revealed no such evidence. A defendant is not entitled to a requested jury instruction that is not supported by the evidence. *People v Mills*, 450 Mich 61, 81; 537 NW2d 909 (1995). Therefore, if counsel had requested defendant's proposed instruction, the trial court would have properly refused to give it. "Counsel is not ineffective for failing to advance a meritless position or make a futile motion." *Henry*, 305 Mich App at 141.

Defendant additionally argues in her Standard 4 brief that trial counsel lied to her when she wrote him a note during the first day of trial asking, "Can you bring it out that Jenkins + Howell were fired?" In response, counsel wrote back, "Judge ruled on Tueday [sic] I couldn't bring it up I'm gonna do it on 'accident.' " As noted above and will be discussed more fully below, defendant contends that she should have been permitted to explore the discipline received by Officers Jenkins and Howell for their roles in the chase. The record is silent regarding the existence or nonexistence of any such ruling. Defendant contends that trial counsel therefore necessarily lied, and that lie necessarily constituted ineffective assistance of counsel.

However, defendant's contention relies on the assumption that no such ruling existed. Doubt is not proof. See *People v Wolfe*, 440 Mich 508, 519; 489 NW2d 748 (1992). Furthermore, the note seemingly reflects trial counsel's vigorous advocacy, to the point of making an effort to introduce defendant's desired evidence notwithstanding a preclusive ruling by the trial court. This strongly suggests a low likelihood that counsel lied, or had any motive to lie. Thus, defendant has not established that trial counsel did in fact lie. *Douglas*, 496 Mich at 592. Finally, as we also discuss more extensively below, defendant has not shown that it was either improper or prejudicial for the trial court to limit discussion of the later discipline of Officers Jenkins and Howell, both of whom had validly invoked their Fifth Amendment rights not to testify.

Finally, defendant argues that the cumulative effect of defense counsel's errors denied defendant a fair trial. However, for cumulative errors to deny a defendant a fair trial, each of those errors must have had some prejudicial effect. *People v Knapp*, 244 Mich App 361, 387-388; 624 NW2d 227 (2001). Because the only errors made by counsel were ultimately of no prejudicial effect, defendant was not denied a fair trial on the basis of cumulative error.

## III. INSTRUCTIONAL ERROR

Defendant next argues that the trial court committed an instructional error when it answered a question from the jury during the jury's deliberation. We disagree.

"This Court reviews jury instructions as a whole to determine whether there is error requiring reversal." *People v Bartlett*, 231 Mich App 139, 143; 585 NW2d 341 (1998). Defendant is entitled to a jury instructed on "all elements of the charged offenses" and any "issues, defenses, and theories supported by the evidence." *Head*, 323 Mich App at 537 (quotation omitted). However, "[a]n imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Id*. (quotation omitted).

During deliberation, the jury sent a note asking, "Does turning police lights on constitute ordering the defendant to stop her vehicle under the law?" The trial court answered this question by instructing the jury as follows:

> The drive—and I'm gonna give you the Michigan Law with regard to this. The driver of a motor vehicle, when given a visual or a [sic] audible signal by a police officer must bring the motor vehicle to a stop. This visual or audible signal may be given by hand, voice, emergency light or siren.

This instruction was based on the following language contained in this Court's opinion in *People v Green*, 260 Mich App 710, 717; 680 NW2d 477 (2004):

> Review of the plain language of MCL 750.479a(1) reveals that a driver of a motor vehicle, when given a visual or audible signal by a police officer, must bring the motor vehicle to a stop. This visual or audible signal may be given by hand, voice, emergency light, or siren. [Citation omitted.]

Defendant argues that the trial court improperly omitted the requirement that the "signal must come from an officially identified police vehicle in order to hold a driver accountable for the offense of fleeing and eluding." *Green*, 260 Mich App at 718.

We find defendant's contention inapposite. The trial court had already instructed the jury on the elements of first-degree fleeing and eluding as well as second-degree fleeing and eluding; in doing so, the trial court stated that the prosecutor was required to prove, as relevant here, "that any vehicle driven by the officer was adequately marked as a law enforcement vehicle." The jury's question was not about the requirement that the vehicle be adequately marked as a law enforcement vehicle, which was not, in any event, seriously in dispute: Officers Jenkins and Howell were established as driving a semimarked police vehicle. Rather, the jury asked whether turning on police lights constituted ordering defendant to stop her vehicle. The trial court answered the question that the jury asked, and in doing so the trial court quoted the pertinent language from this Court's opinion in *Green*. Therefore, because the jury was not asking the trial court about the requirement that a police vehicle be adequately marked, the court was not required to again instruct the jury with respect to that element of the fleeing and eluding charges. Taken as a whole, the trial court's instructions were adequate.

## IV. PROSECUTORIAL MISCONDUCT

Defendant next argues that she was denied a fair and impartial trial on the basis of a wide array of alleged prosecutorial misconduct. We disagree.

"Generally, prosecutors are accorded great latitude regarding their arguments, and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). Claims of prosecutorial misconduct are reviewed on a case-by-case basis, considering the context of the conduct or remarks made by the prosecutor. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Prosecutors are not required to "confine argument to the blandest possible terms," and they have greater latitude in responding directly to defense counsel's arguments than they might otherwise have. *People v Dobek*, 274 Mich App 58, 64, 66; 732 NW2d 546 (2007).

-8-

Defendant first contends that the prosecutor engaged in misconduct during closing argument by asserting that defendant had cocaine in her system; defendant suggests this was improper because defendant actually had a cocaine metabolite, rather than cocaine, in her body. First, defendant's argument is extremely cursory and unsupported by any citation to a transcript. See MCR 7.212(C)(7); *Kelly*, 231 Mich App at 640-641. Furthermore, as we have discussed, the presence of cocaine metabolites in defendant's urine, given her clear lack of an opportunity to ingest any cocaine between the accident and the collection of the urine specimen, unambiguously creates a reasonable inference that she did in fact have cocaine in her body. Thus, the prosecutor's argument in closing that defendant had cocaine in her system was supported by evidence and reasonable inferences from the evidence.

Defendant next contends that, during rebuttal closing argument, the prosecutor attempted to shift the burden of proof and personally denigrated defense counsel. Specifically, during rebuttal closing argument, the prosecutor argued, in relevant part:

> One of my mentors in the Prosecutor's Office used to tell me that; in any criminal case there's really only two claims being made. Either it wasn't me. Or it was me but here's my excuse.
>
> Now clearly this isn't a it wasn't me. This isn't a case of identification being an issue. We know everyone involved. And we know she was driving.
>
> This isn't a case of well, here's my explanation or her's [sic] my excuse. She has no excuse. She has no explanation. She can try and—[defense counsel] can work hard. And he's a great attorney.
>
> But he's trying to do some smoke and mirrors. He's trying to say well, you know, if you look at the evidence this one kind of way and you have a conspiracy theory maybe she's not guilty. Maybe.

Importantly, this was in rebuttal to defendant's closing argument, which included, in relevant part, the following statements:

> So at the end of the day you have to see, you just can't look at the prosecutions [sic] pretty videos and pretty power [point] presentations. You got to really look and break down the elements of the crime.
>
> It's a strict liability on the prosecution that they have to put that puzzle together completely. Each and every element of the crime. They can't put have [sic] of it together and say, well, it looks like what I said it is. It's mostly what I say it is. They have to show you all the elements. And I don't believe that they have.
>
> * * *
>
> So let's not fall for the government's smoke about pretty pictures and pretty power point presentations and let's get down to the meat and potatoes of

-9-

what it is. And they just haven't shown it to you. And I'm asking for a not guilty on everything.

Defense counsel also alluded in closing to the prosecutor's failure to obtain "black box information" regarding the vehicles involved in the accident, even though there was unrebutted testimony that no "black box information" was available given the ages of the vehicles. Defense counsel further suggested in closing that it was unknown why the police officers were trying to stop defendant's vehicle and that the real reason for attempting to stop her vehicle was not because she had been driving the wrong way on a one-way street.

When viewed in its proper context, the prosecutor's remarks were responsive to defense counsel's arguments that the prosecution had not established each element of each charged offense. The prosecutor reasonably pointed out that identification, which "is an element of every offense," *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008), was not at issue. Furthermore, there was no real dispute that one person died and one person was injured in the accident; defendant presented it during opening argument as merely "[a] tragic accident where [defendant] exhibited some negligence" and that it specifically was not murder. One element of second-degree murder is that the defendant did not have a lawful justification or excuse for causing the victim's death. *Bergman*, 312 Mich App at 487. The prosecutor appropriately responded to defendant's various insinuations by pointing out that it was defendant who was missing the point. Under the circumstances, the prosecutor's remarks in rebuttal closing argument to the effect that defense counsel was "trying to do some smoke and mirrors[]" and that defense counsel was alluding to a "conspiracy theory" were not improper or unfair in light of the arguments made by defense counsel.

In any event, the trial court instructed the jury that the prosecutor had the burden of proving each element of the charged offenses beyond a reasonable doubt and that defendant was not required to prove her innocence or to do anything. The court further instructed the jury that the jury was required to decide the case only on the basis of the properly admitted evidence, that the lawyers' statements and arguments were not evidence, and that the jury was the sole finder of fact. The trial court's instructions were "sufficient to eliminate any prejudice that might have resulted from the prosecutor's remarks." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Indeed, the jury acquitted defendant of second-degree murder.

In her Standard 4 brief, defendant further argues that the prosecutor committed misconduct by untimely filing a witness list and calling an unendorsed witness. This assertion is not wholly baseless, but we find no indication that defendant was prejudiced.

MCL 767.40a(3) provides, "Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial." MCL 767.40a(4) states, "The prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties." It appears that the prosecution filed its witness list fewer than 30 days before trial. It also appears that the prosecutor called Officer Donegan as a witness even though Officer Donegan was not indicated as being endorsed

on that list and without a formal grant of leave to do so. However, a prosecutor's failure to comply with these provisions does not warrant relief unless the defendant demonstrates unfair prejudice arising from the violation. *Callon*, 256 Mich App at 328-329; *People v Williams*, 188 Mich App 54, 59-60; 469 NW2d 4 (1991). "Mere negligence of the prosecutor is not the type of egregious case for which the extreme sanction of precluding relevant evidence is reserved." *Callon*, 256 Mich App at 328.

Defendant's argument, and her testimony at the *Ginther* hearing, are quite confusing. It appears that defendant believed Butler had not been listed on an original witness list but that defense counsel told defendant that the prosecutor had provided an amended witness list on June 16, 2017, that had Butler's name on it. Defendant also seemed to suggest that Officer Donegan's name was not on the prosecutor's original witness list but was added later, which defendant said shocked her because she did not know he existed. Nonetheless, it defies any credulity to suggest that the defense could possibly have been surprised by Butler's involvement, given that Butler was defendant's passenger, Butler had been seriously injured in the accident, and Butler was listed on the charging documents as a complainant or victim. We can conceive of no prejudice to defendant as a result of any tardy indication that Butler might be a witness.

Regarding Officer Donegan, although the record is not developed regarding the reason for him not being endorsed, it appears his testimony ultimately became necessary at trial in light of the fact that Officer Howell and Officer Jenkins were unavailable to testify because they were expected to plead the Fifth Amendment. Given the unavailability of Officer Howell and Officer Jenkins, the testimony of Officer Donegan, who followed behind Officer Howell and Officer Jenkins during the police chase, became far more critical in order to provide evidence regarding the attempt by police officers to effectuate a traffic stop of defendant as well as defendant's flight from the police officers, leading to the accident. There is no indication of any improper motive on the part of the prosecutor for failing to endorse Officer Donegan. Officer Donegan would have been merely a cumulative witness to Officers Jenkins and Howell, if Officers Jenkins and Howell had not asserted their Fifth Amendment rights, making them unavailable. Overall, if defendant had raised the matter at trial, it appears quite certain that the trial court would have found good cause to formally add Officer Donegan as an endorsed witness.

In any event, defendant has not explained how her defense might have changed if the prosecutor had filed its witness list on time and if Officer Donegan had been endorsed on the witness list. Defendant has not shown that, with additional time, she would have discovered evidence to rebut either witness's testimony. It is not sufficient to make a broad assertion that the late addition of a witness denied a defendant the opportunity to develop an adequate defense. Absent a specific showing of unfair prejudice, defendant's claim must fail.

Further in her Standard 4 brief, defendant argues that the prosecutor failed to correct perjured testimony. Defendant specifically objects to Officer Donegan's testimony that Officers Jenkins and Howell attempted to disengage from their pursuit of defendant's vehicle before the accident. Defendant argues that because Officers Howell and Jenkins were later disciplined for violating an internal police department policy regarding vehicular pursuits, Officer Donegan's testimony must have been perjured. We do not accept defendant's reasoning, and we do not find it supported by the evidence.

There is simply nothing logically incompatible about Officers Howell and Jenkins being disciplined for improperly initiating a pursuit, and Officers Howell and Jenkins also attempting to disengage from that pursuit. Officer Donegan testified that he was approximately 15 to 20 car lengths behind the pursuit, and at some point,

> Officers Howell and Jenkins attempted to disengage. So they just kinda dropped back due to the heavy flow of traffic. It wasn't worth it. The gray Intrepid continued northbound on Woodward at a high rate of speed.

The internal affairs memo that defendant has provided explicitly states,

> Furthermore, while it is unclear at what specific point Officers Jenkins and Howell slowed down and started to discontinue the pursuit, the video evidence does illustrate a reduction in the officers' speed prior to the collision.

Thus, there is nothing inherently unbelievable or suspicious on its face about Officer Donegan's testimony that Officers Howell and Jenkins attempted to disengage at some point, and it is in fact supported by the evidence defendant claims to be contradictory. In short, there is no evidence that Officer Donegan's testimony was false, let alone that it was willfully false and thus comprised perjury. See *People v Lively*, 470 Mich 248, 253-254; 680 NW2d 878 (2004) (perjury is a willfully false statement). The prosecutor could reasonably conclude in the circumstances of this case that Officer Donegan was telling the truth to the best of his ability.[4]

## V. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that there was insufficient evidence to support her convictions. We agree with defendant that there was insufficient evidence to support her convictions for operating a motor vehicle while license suspended, revoked, or denied, causing death, MCL 257.904(4); and operating a motor vehicle while license suspended, revoked, or denied, causing a serious impairment of a body function, MCL 257.904(5). The prosecution concedes that defendant's license had merely expired, so there was necessarily insufficient evidence to sustain either conviction. See *People v Acosta-Baustista*, 296 Mich App 404, 409; 821 NW2d 169 (2012). Thus, as noted at the outset of this opinion, those two convictions must be reversed. However, we find the evidence sufficient to sustain defendant's other convictions.

A defendant's argument regarding the sufficiency of the evidence is reviewed de novo. *People v Kanaan*, 278 Mich App 594, 618; 751 NW2d 57 (2008). "When reviewing a

---

[4] In her Standard 4 brief, defendant also presents the bare assertion, unsupported by any argument, that she was denied her constitutional rights of due process and confrontation when Officer Donegan testified regarding the actions of Officer Howell and Officer Jenkins. We will not develop this argument on her behalf. *Kelly*, 231 Mich App at 640-641. In any event, Officer Donegan testified about his own observations, including what he saw when Officers Jenkins and Howell tried to effectuate a traffic stop of defendant. We are unaware of any authority that it is clearly or obviously erroneous to allow a witness to testify about what he saw other people do.

defendant's challenge to the sufficiency of the evidence, [this Court] review[s] the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (quotation marks and citation omitted). Direct evidence of guilt is not required. *Id*. "Rather, circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (quotation marks, brackets, and citation omitted). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Kanaan*, 278 Mich App at 619. "All conflicts in the evidence must be resolved in favor of the prosecution." *Id*.

Defendant's charges of first-degree fleeing and eluding, MCL 257.602a(5); and second-degree fleeing and eluding, MCL 257.602a(4)(a); both include a relevant essential elements that the police officers' vehicle was adequately identified as a law enforcement vehicle, that the police officers ordered defendant to stop, that defendant was aware of that order, and that defendant violated that order by trying to flee. See MCL 257.602a(1); *People v Grayer*, 235 Mich App 737, 740-742; 599 NW2d 527 (1999). "[A] conviction for the crime of fleeing and eluding a police officer will be contingent on the facts and circumstances in each case, and there must be sufficient indicia through the police uniform and vehicle that the person making the stop is, in fact, a police officer." *Green*, 260 Mich App at 719 n 3.[5] An effort to flee may be inferred from a defendant increasing the speed of their vehicle. *Grayer*, 235 Mich App at 741. An order to stop may be given by the activation of a siren or emergency lights on a police vehicle. *Id*.

The evidence, from multiple witnesses, established that the police vehicle driven by Officers Howell and Jenkins was a semimarked police vehicle that had red and blue lights on the grill, red and blue lights on the rear mirror, a siren, and a push bumper. It was further established that the lights and siren were functional. In her Standard 4 brief, defendant contends that their vehicle "was not marked with 'Police,' 'Detroit,' 'Wayne County,' 'Michigan.'" Defendant provides no authority that such specific markings are required, and we will not search for such authority on her behalf. *Kelly*, 231 Mich App at 640-641. The evidence also established that Officers Howell and Jenkins activated their vehicle's lights and siren, and the lights and siren were clearly observed by witnesses during and after the pursuit. Furthermore, the jury was shown a video recording of the police pursuit, so the jury could determine for itself the adequacy of the vehicle's markings and the operation of the vehicle's lights and siren. Thus, the evidence amply established that the vehicle was adequately identified as a law enforcement vehicle, and officers gave defendant an order to stop.

Defendant attempts to challenge whether she was aware that she had been ordered to stop by police officers. In her Standard 4 brief, she contends that "[f]or all she knew, [the vehicle behind her] may have been someone trying to commit an illegal act against her such as carjacking." It is highly unlikely that defendant was unaware of the police vehicle's lights and

---

[5] Defendant makes no argument challenging the adequacy of the police uniforms worn by Officer Howell and Officer Jenkins.

siren. It may, perhaps, remotely possible that a criminal might have illegally constructed an imitation police vehicle for precisely that purpose. However, Butler, defendant's passenger, testified that defendant explicitly stated that there was an "undercover cop car" behind them. Defendant contemporaneously began accelerating, frightening Butler. Butler started screaming and telling defendant to let Butler out of the car, whereupon defendant accelerated further. Thus, the evidence clearly also established that defendant was aware that she had been given an order to stop by a police and that she violated that order by attempting to flee. A rational trier of fact could have inferred from defendant's continued speeding and disregard of a traffic light that defendant was still attempting to flee at the time of the accident, notwithstanding Officers Howell and Jenkins attempting to disengage. The evidence was sufficient to support defendant's fleeing and eluding convictions.

Defendant's sole challenge to her convictions of operating a motor vehicle while intoxicated causing death, MCL 257.625(4)(a); and operating a motor vehicle while intoxicated causing a serious impairment of a body function, MCL 257.625(5)(a); is that there is no evidence that she drove with any amount of a controlled substance in her body. Again, defendant argues that her toxicology report showed the presence of cocaine metabolites in her urine, not specifically cocaine. However, we have already discussed above why *Feezel*, 486 Mich 184, is inapplicable to the cocaine metabolites, and why the presence of the cocaine metabolites here supports a reasonable inference that defendant had cocaine in her body while she was driving. We disagree with our dissenting colleague's assertion that we are shifting the burden of proof. The prosecutor is not required to preemptively disprove "every reasonable theory consistent with innocence." *Martin*, 271 Mich at 340 (quotation omitted). We do not believe the prosecutor was obligated to establish that cocaine metabolization behaves as one might ordinarily expect any drug to behave. As discussed, THC is metabolized and excreted in a uniquely misleading manner. The cocaine metabolite proves that cocaine was ingested at some point and constitutes inferential evidence that cocaine itself is present in the body. The elements of a crime may be proved by circumstantial or inferential evidence. *Id*. The evidence was sufficient to support defendant's intoxicated driving convictions.

Finally, defendant's sole challenge to her convictions of reckless driving causing death, MCL 257.626(4); and reckless driving causing a serious impairment of a body function, MCL 257.626(3); is that there was insufficient evidence that she drove with willful or wanton disregard for the safety of persons. Both offenses share the relevant requirement that defendant operated a vehicle on a highway "in willful or wanton disregard for the safety of persons or property." MCL 257.626(2); *People v Jones*, 497 Mich 155, 167; 860 NW2d 112 (2014). Under that standard, a defendant need not intend to cause harm, but must act with more than simple carelessness and must knowingly disregard the dangerousness of their conduct. *People v Carll*, 322 Mich App 690, 695; 915 NW2d 387 (2018).

Defendant argues that there is no evidence of how fast she was driving, that there is insufficient evidence that she knew the police were trying to effectuate a traffic stop, and that she only had a cocaine metabolite, rather than cocaine, in her system. However, there was ample eyewitness testimony that defendant was driving at excessive speeds along Woodward, including one eyewitness's testimony that defendant's vehicle was traveling at approximately 70 miles an hour, far in excess of the speed vehicles normally travel in that area. Even presuming it could not be determined specifically how fast defendant was driving, the trier of fact could reasonably

conclude that defendant must have been aware that she was driving far too fast for safety. The risk of losing control and the danger to others from doing so is well known to all. Defendant's excessive speed and disregard for traffic control devices was sufficient to support a conclusion that defendant drove the vehicle with willful or wanton disregard for the safety of persons. See *Carll*, 322 Mich App at 696-698. We have already discussed the lack of merit to defendant's other contentions. The evidence was sufficient to support defendant's reckless driving convictions.

## VI.  ADMISSION OF TOXICOLOGY REPORT

Defendant next argues that the trial court abused its discretion by admitting the copy of the toxicology report containing defendant's name. Defendant contends that exclusion of this evidence was required to remedy a discovery violation because the prosecutor did not provide this copy of the toxicology report to the defense until the first day of trial. We disagree.

A trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but any preliminary questions of law are reviewed de novo. *People v Mann*, 288 Mich App 114, 117; 792 NW2d 53 (2010). This Court also reviews for an abuse of discretion a trial court's choice of a remedy for a discovery violation. MCR 6.201(J); *People v Jackson*, 292 Mich App 583, 591; 808 NW2d 541 (2011). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

Importantly, the toxicology report *itself* had been provided to the defense long before trial. The *only* difference between the report previously provided and the report admitted is that the original report bore a pseudonym rather than defendant's actual name. According to the prosecution on the first day of trial, the hospital had only just then provided a copy bearing defendant's name. There was no serious dispute that the original report was, in fact, for defendant. Indeed, the identification number used for defendant, and all other content, was identical. Furthermore, as noted above, MCL 257.625a(8) refers to making the test *results* available at least two days before trial. For purposes of compliance with MCL 257.625a(8), the provision of the entire report with an undisputed pseudonym was at worst an insignificant technicality. See *In re Traub Estate*, 354 Mich 263, 278-279; 92 NW2d 480 (1958). Defendant certainly cannot have been surprised by the substantive contents of the report.

Defendant contends that she was prejudiced because the trial court had initially ruled that the copy containing defendant's name was inadmissible, and her attorney then told the jury in his opening statement that there would be no evidence that defendant had recently used any drugs or alcohol. However, the trial court in its ruling had left open the possibility of admitting the copy of the toxicology report that used a pseudonym and contained an identifying number for defendant. The defense was thus on notice that there remained a possibility that a version of the toxicology report could still be admitted. Even if a discovery violation had occurred, "the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances." *Jackson*, 292 Mich App at 591 (quotation marks and citation omitted). Because we cannot conclude that defendant was meaningfully prejudiced, we cannot conclude that the trial court abused its discretion in admitting the report.

## VII. EXCLUSION OF EVIDENCE REGARDING OFFICERS' DISCIPLINE

Defendant next argues that the trial court erred by excluding evidence that Officers Howell and Jenkins were disciplined for violating an internal police department policy in connection with their pursuit of defendant's vehicle. We disagree.

Initially, defendant fails to explain how she would have introduced evidence regarding this discipline. Officer Howell and Officer Jenkins did not testify at trial. Defense counsel's testimony at the *Ginther* hearing indicated that the defense did not wish to call those officers as witnesses. Defense counsel testified, "I wouldn't use [Officer Howell and Officer Jenkins] anyway. That wouldn't be strategically smart to call a police officer in defense's case in chief. Not in this situation, anyway." Notwithstanding the expansive array of alleged deficiencies in her trial counsel's performance, as discussed above, defendant notably does not challenge counsel's strategic assessment of the value of Officers Howell's and Jenkins's testimonies.

Defendant seemingly argues that the trial court should have required Officer Jenkins and Officer Howell to appear as witnesses at trial. The officers then could have, if they wished, invoked their Fifth Amendment privileges in response to specific questions, rather than make a blanket assertion of their Fifth Amendment privileges and thus avoid appearing at trial altogether. However, in light of defense counsel's unchallenged and presumably sound strategic determination that it would have been unwise to call Officers Howell and Jenkins as witnesses, there is no reason to believe that the defense would have called those officers as witnesses at trial even if he could have called them.[6] Defendant does not further explain how she might have gone about introducing evidence of the discipline imposed upon Officers Howell and Jenkins. As discussed above, defense counsel apparently intended to find a way to introduce the evidence by "accident," but we do not know what such an accident might entail. We decline to speculate. *Kelly*, 231 Mich App at 640-641.

Moreover, defendant has failed to establish that any evidence regarding the discipline of the officers would have been admissible under the rules of evidence. "Evidence which is not relevant is not admissible." MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Under MRE 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

---

[6] We therefore also reject defendant's further argument in her Standard 4 brief that the trial court improperly insulated Officer Jenkins and Officer Howell from being questioned, that the officers should not have been permitted to make a blanket assertion of their Fifth Amendment rights, and that the jury should have been given evidence that the officers procured their own unavailability. Defendant has not challenged counsel's strategic determination that he would not have called Officers Howell and Jenkins in any event. Therefore, defendant cannot show that any error of the trial court in permitting the officers to avoid appearing at trial had any effect.

Defendant argues that any evidence that the officers failed to follow an internal police department policy during the pursuit would have been relevant to her defense that the officers were not acting in the lawful performance of their duties, so she was thus not guilty of the fleeing and eluding charges. However, defendant has not offered any authority tending to suggest that a police officer's violation of an internal department policy affects the legality of the officer attempting to effectuate a traffic stop for a clear traffic violation. We will not search for any such authority. *Kelly*, 231 Mich App at 640-641. Furthermore, it is common knowledge that internal policies often pertain to procedures for the convenience of administration, or, as the prosecution points out, limiting civil liability, and lack any true force of law. Because defendant has not explained how the violation of an internal police department policy has any bearing on whether the officers were acting in the lawful performance of their duties, evidence of that violation was properly excluded as irrelevant. Furthermore, any marginal relevance would have been overwhelmed by the injection of confusing and misleading issues extraneous to defendant's own conduct of fleeing a police vehicle at excessive speeds and driving through a red light, thereby killing one person and seriously injuring another person.

In her Standard 4 brief, defendant further argues that the trial court denied her constitutional right to present a defense by limiting her ability to cross-examine Officer Donegan regarding Officers Howell's and Jenkins's discipline. However, as discussed, defendant has not established that this evidence would be admissible or relevant. "[T]he right to present a defense extends only to relevant and admissible evidence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 225 (2016) (quotation omitted); see also *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993) ("The right of cross-examination is not without limit; neither the Confrontation Clause nor due process confers an unlimited right to admit all relevant evidence or cross-examine on any subject."). Defendant has therefore not established a violation of her constitutional right to present a defense.

## VIII. NEWLY DISCOVERED EVIDENCE

Defendant next argues that she is entitled to a new trial because she has obtained a Detroit Police Department internal affairs memo in which the principal author of the memo, Detroit Police Sergeant Larry N. Campbell, referred to the vehicle used by Officers Howell and Jenkins as "unmarked."[7] Defendant suggests that this shows that Officer Donegan committed perjury when he described the vehicle as semimarked. Defendant also asserts that the internal affairs memo indicates that Officer Howell and Officer Jenkins failed to follow internal police

---

[7] The internal affairs memo is attached to defendant's brief on appeal. It is not contained in the lower court record. In general, a party may not expand the record on appeal. *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013). We will nonetheless address the issue given that the relief that defendant requests is either a new trial or a remand to the trial court so that she can present the new evidence to the trial court, and given that this Court denied defendant's motion to remand "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v Stock*, unpublished order of the Court of Appeals, entered February 6, 2019 (Docket No. 340541).

department policy; defendant says that this would support her defense that the officers were not acting in their lawful capacity when they pursued her. Defendant therefore contends that this newly discovered evidence would make a different result probable on retrial. We disagree.

Motions for a new trial on the basis of newly discovered evidence are not regarded with favor. *People v Rao*, 491 Mich 271, 279-280; 815 NW2d 105 (2012). A defendant must show that:

> (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (quotation marks and citation omitted).]

The defendant has the burden of satisfying each part of this test. *Rao*, 491 Mich at 279. "The discovery that testimony introduced at trial was perjured may be grounds for a new trial." *People v Mechura*, 205 Mich App 481, 483; 517 NW2d 797 (1994). Furthermore, the newly discovered evidence must be admissible. See *People v Grissom*, 492 Mich 296, 324; 821 NW2d 50 (2012) (MARILYN KELLY, J., concurring); see also *People v Darden*, 230 Mich App 597, 606; 585 NW2d 27 (1998).

Defendant fails to explain how the contents of the internal affairs memo would be admissible. Police reports generally constitute inadmissible hearsay. *In re Forfeiture of a Quantity of Marijuana*, 291 Mich App 243, 254; 805 NW2d 217 (2011). Defendant simply does not address how the memo or its substantive contents could be introduced into evidence. We again will not make such arguments on her behalf. *Kelly*, 231 Mich App at 640-641. Furthermore, Sergeant Campbell's errant references to the vehicle as unmarked were corrected by the commanding officer, Detroit Police Lieutenant Jeffrey Hahn, who noted that the vehicle was semimarked. The evidence in the record overwhelmingly supported the fact that the vehicle was semimarked, and indeed that defendant was actually aware that it was a police vehicle. The memo, read as a whole and including Lieutenant Hahn's correction, does not support any suggestion that Officer Donegan committed perjury. Finally, as already discussed, defendant has not explained how any violation of internal police department policies affect whether an officer acted lawfully.

Therefore, defendant has not established that she is entitled to a new trial on the basis of newly discovered evidence. Nor is there any basis to remand the case to the trial court so that the newly discovered evidence can be presented to the trial court. A remand would be futile because there is nothing in the internal affairs memo that would make a different result probable on retrial.

IX. PROBABLE CAUSE

In her Standard 4 brief, defendant argues that Officer Jenkins and Officer Howell lacked probable cause to attempt to effectuate a traffic stop of defendant's vehicle. We disagree.

As discussed earlier, Officer Donegan saw defendant drive the wrong way on a one-way street, which is a civil infraction. See MCL 257.641. Because Officer Donegan was in an unmarked vehicle, he advised his "take down crew," comprised of Officers Jenkins and Howell, who were in a semimarked vehicle, to effectuate a traffic stop of defendant. Defendant argues that Officers Howell and Jenkins lacked probable cause to effectuate a traffic stop of defendant because they did not see her commit the civil infraction. However, probable cause does not necessarily need to be based on direct and personal observations by the seizing or arresting officer, particularly in the presence of exigent and dangerous circumstances. *People v Barbarich*, 291 Mich App 468, 481-482; 807 NW2d 56 (2011). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v United States*, 517 US 806, 810; 116 S Ct 1769; 135 L Ed 2d 89 (1996). Officer Donegan's observation of defendant's civil infraction constitutes sufficient probable cause to effectuate a traffic stop.

In any event, the officers did not ultimately effectuate a traffic stop, because defendant fled the officers at high speed, drove through a red light, and caused a crash that killed one person and seriously injured another. Defendant cites authority pertaining to the issuance of a citation for a civil infraction, MCL 257.742(3). However, there is no issue here whether defendant was properly issued a citation for a civil infraction. The issue raised by defendant is whether the police officers had probable cause to effectuate a traffic stop of defendant. There is nothing in MCL 257.742(3) that precluded Officers Howell and Jenkins from, as discussed above, properly relying on Officer Donegan's observations when they attempted to effectuate a traffic stop of defendant. In any event, even if Officers Howell and Jenkins acted illegally, defendant *chose* to flee in a devastatingly dangerous manner and has not offered any plausible excuse for doing so. Thus, even if Officers Howell and Jenkins did lack probable cause, that lack has no bearing on defendant's guilt.

## X. UNCONSTITUTIONALLY VAGUE STATUTES

Defendant next argues that certain statutory provisions are void for vagueness. We disagree.

Defendant first contends that MCL 257.625(8), which prohibits operating a motor vehicle with any amount of certain controlled substances in the driver's body, is unconstitutionally vague and overbroad as applied to defendant. Defendant asserts that the provision fails to provide an ordinary person with notice of what conduct is prohibited, has potential for arbitrary and discriminatory enforcement, and is not rationally related to the objective of the statute. Our Supreme Court has rejected this argument. See *People v Derror*, 475 Mich 316, 336-340; 715 NW2d 822 (2006), overruled in part on other grounds by *Feezel*, 486 Mich 184. The Court also rejected the contention that the statute was unconstitutionally vague by creating a potential for arbitrary and discriminatory enforcement, or that it was not rationally related to its objective. *Derror*, 475 Mich at 336-340.

We recognize that in *Feezel*, 486 Mich at 211-212, our Supreme Court opined that the *Derror* Court's interpretation of MCL 257.625(8) was "probably unconstitutional," but the *Feezel* Court then stated that it declined to address the constitutionality of MCL 257.625(8). Therefore, the constitutional analysis in *Derror* remains precedent by which this Court is bound.

See *O'Dess v Grand Trunk Western R Co*, 218 Mich App 694, 700; 555 NW2d 261 (1996) ("A decision of the Supreme Court is binding upon this Court until the Supreme Court overrules itself[.]").

Defendant next argues that the reckless driving causing death statute, MCL 257.626(4), and the moving violation causing death statute, MCL 257.601d(1), are both void for vagueness because some conduct could be proscribed by both statutes. Defendant asserts that there is great potential for arbitrary or discriminatory prosecution and that the statutes fail to inform an ordinary citizen of which statute governs the citizen's behavior. However, the Legislature may enact cumulative punishments for the same conduct under different statutes. *People v Mitchell*, 456 Mich 693, 695; 575 NW2d 283 (1998). A statute is void for vagueness not because it may have some overlap with another statute, but if it fails "to give 'fair warning' to defendants of what conduct will constitute a crime without resorting to speculation" or to "provide adequate guidance to the trier of fact without requiring a court to 'interpret' any ambiguities." *Mesik*, 285 Mich App at 545.

Defendant has not been charged with, or convicted of, moving violation causing death, so the constitutionality of MCL 257.601d(1) is not pertinent. MCL 257.626(4) provides that "a person who operates a vehicle in violation of subsection (2) and by the operation of that vehicle causes the death of another person is guilty of a felony . . . " MCL 257.626(2) prohibits operating "a vehicle upon a highway or a frozen public lake, stream, or pond or other place open to the general public, including, but not limited to, an area designated for the parking of motor vehicles, in willful or wanton disregard for the safety of persons or property . . . " The meanings of the words used in these provisions "can fairly be ascertained by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words." *Mesik*, 285 Mich App at 545 (quotation omitted). Therefore, the wording of the statute is therefore sufficiently definite to afford proper notice of the conduct proscribed. *Id*. at 544-546.

The fact that it might be possible for a prosecutor to arbitrarily decide which statute to apply does not require a person to guess at what conduct is proscribed by law; the question is whether the statute is itself incomprehensible. See *People v Wood*, 326 Mich App 561, 588; 928 NW2d 267 (2018), lv gtd ___ Mich ___ (2019). As noted, the wording of MCL 257.626(4) is not vague, so it is not unconstitutionally void for vagueness.

## XI. CONCLUSION

Defendant's convictions of operating a motor vehicle while license suspended, revoked, or denied, causing death, MCL 257.625(4)(a); and operating a motor vehicle while license suspended, revoked, or denied, causing a serious impairment of a body function, MCL 257.904(5); are reversed. Defendant's remaining convictions and sentences are affirmed. We remand for entry of an amended judgment of sentence in accordance with this opinion. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Mark J. Cavanagh

-20-