*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
March 24, 2022

v

TROY LEE WRIGHT,

        Defendant-Appellant.

No. 354247
Saginaw Circuit Court
LC No. 18-045313-FC

Before: O'BRIEN, P.J., and STEPHENS and LETICA, JJ.

PER CURIAM.

A jury convicted defendant of second-degree murder, MCL 750.317; assault with intent to murder, MCL 750.83; carrying a dangerous weapon with unlawful intent, MCL 750.226; and three counts of possession of a firearm during the commission of a felony, MCL 750.227b(1). He appeals by delayed leave granted.[1] We affirm.

## I. BACKGROUND

In the early morning hours of April 13, 2018, defendant killed his wife, Valarie Wright, by shooting blindly into the motel room where he had seen her earlier that night with another man, Garlan Moten. The shooting was the culmination of events that night involving the decedent, Moten and defendant.

About two hours before the shooting, defendant arrived at the motel where Moten and Wright were staying and approached Moten in the parking lot. When the two spoke, Moten denied knowing Wright, but defendant knew that was untrue. Defendant later found Wright in a motel room in a state of undress, and took her phone and apparently remained on the premises in his car. Moten eventually returned to Wright's room, and he and Wright left the motel in Wright's car. As they drove, Wright became aware that defendant was following them and called 911. In her 911

---

[1] *People v Wright*, unpublished order of the Court of Appeals, entered January 4, 2021 (Docket No. 354247).

call, Wright reported that defendant had a gun.  Defendant had also called 911, claiming that Wright was being held hostage by another man.  Officers eventually stopped both cars and searched defendant's car but did not find any guns.  Finding no basis for an arrest, the officers allowed everyone to leave the scene but told defendant to leave Wright alone.  Wright and Moten returned to the motel about an hour later.  At approximately 2:00 a.m., defendant, having returned to the motel, fired five shots through the motel room's exterior window while Moten was in the bathroom.  Wright, however, was in the motel room.  She was struck twice by rounds fired by defendant and died.

Much of this appeal focuses on pre-trial rulings made by the trial court.  The prosecution filed notices of intent to introduce evidence of defendant's infidelity and multiple acts of domestic violence, and to present a domestic-violence expert.  The court excluded a 2007 domestic violence incident, but allowed two other incidents to be admitted, allowed evidence of the defendant's infidelity to be admitted, and permitted the domestic-violence expert to testify.

At trial, multiple police officers involved in the case testified about the events of the night of Wright's death.  They also testified that defendant had been continually tracking Wright in the weeks leading up to the shooting through GPS tracking on Wright's vehicle, and had searched on the internet for males with names similar to Moten.  Moten and another male friend of Wright also testified.  Moten testified primarily about the events of the night of Wright's death.  The other man testified about a prior incident of domestic violence between Wright and defendant that occurred when defendant found the man and Wright alone in a car.  The domestic violence expert testified regarding behaviors of battered persons and presented a document entitled "the Power and Control Wheel," over objection from the defense.  The defense offered no witnesses.

Defendant was found guilty and sentenced as previously noted.  This appeal followed.

## II.  STANDARD OF REVIEW

On appeal, defendant takes issue with decisions by the trial court to admit certain evidence at trial.  We review for abuse of discretion a trial court's decision to admit evidence.  *People v Cameron*, 291 Mich App 599, 608; 806 NW2d 371 (2011).  A trial court abuses its discretion when it chooses an outcome outside the range of principled outcomes.  *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).  A preserved, nonconstitutional error is not grounds for reversal unless it is more probable than not that the error was outcome-determinative.  *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999).

III.  ANALYSIS

A.  EVIDENCE OF INFIDELITY

Defendant first argues that the trial court abused its discretion by admitting evidence of his past infidelity.  We disagree.[2]

There was no dispute that defendant shot and killed Wright.  Consequently, the principal dispute in the case was whether the shooting amounted to murder (as argued by the prosecution) or voluntary manslaughter (as argued by defendant).  "[T]o show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions."  *People v Mendoza*, 468 Mich 527, 535; 664 NW2d 685 (2003).  To establish the element of adequate provocation, it is not enough that the defendant was subjectively provoked—the provocation must be such that it "would cause the reasonable person to lose control."  *People v Pouncey*, 437 Mich 382, 389; 471 NW2d 346 (1991).

Defendant's argument at trial was that, upon finding Wright being unfaithful, defendant was so overwhelmed by passion that he "couldn't control himself" and "[i]n an act of rage, while his mind [was] clouded and full of pain, he fire[d] several shots through the window," killing Wright.  The prosecution sought to admit evidence of defendant's infidelity to cast doubt on his argument that it was reasonable for him to be so overwhelmed with passion upon finding Wright with another man that he "couldn't control himself" and shot Wright in a fit of rage.  The trial court admitted the evidence, and defendant now argues that this decision was improper because evidence of his prior infidelity was irrelevant under MRE 401 and otherwise unfairly prejudicial under MRE 403.

Under MRE 401, evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable."  MRE 401.  Relevance under MRE 401 has two components: (1) materiality, meaning the proffered evidence must be related to "any fact that is of consequence," and (2) probative value, meaning the evidence must tend to make the existence of that fact more or less probable.  *People v Crawford*, 458 Mich 376, 388-390; 582 NW2d 785 (1998)

The first component is clearly satisfied here—whether defendant was adequately provoked was a fact of consequence in dispute.  The second component is also satisfied.  The probative value inquiry looks to see whether the evidence has *any* tendency to make the fact more or less likely

---

[2] On appeal, the prosecution suggests that defendant abandoned this issue because his brief failed to identify any infidelity evidence presented at trial.  See *People v McGraw*, 484 Mich 120, 131 n 36; 771 NW2d 655 (2009) ("Failure to brief an issue on appeal constitutes abandonment.").  As defendant notes in his reply brief, however, defendant's initial brief cited specific testimony about defendant's infidelity in the facts section.  We do not believe that defendant's citation to testimony in the facts section, coupled with an argument section dedicated to the infidelity evidence, constitutes a "failure to brief" the issue.  Therefore, defendant did not abandon this issue.

than it would be without the evidence. *People v Mills*, 450 Mich 61, 68; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). That defendant was previously unfaithful to Wright could rationally lead jurors to question whether it was reasonable for defendant to lose control upon finding Wright with another man. While this conclusion relies on making certain inferences, that does not render the evidence irrelevant. See *People v Hardiman*, 466 Mich 417, 427-428; 646 NW2d 158 (2002) (explaining logical relevance and how evidence that requires drawing multiple inferences is still relevant). It was for the jury to decide what inferences to draw from the evidence, and they could choose to infer that defendant's past unfaithfulness made it less reasonable for defendant to lose control upon finding Wright being unfaithful, or not.

Turning to defendant's argument that the evidence was unfairly prejudicial under MRE 403, that rule provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." MRE 403 is not, however, intended to exclude "damaging" evidence, because any relevant evidence will be damaging to some extent. *Mills*, 450 Mich at 75. MRE 403 is only intended to exclude evidence that is *unfairly* prejudicial, which is "when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Crawford*, 458 Mich at 398.

Evidence of defendant's infidelity had probative value for the reasons previously explained. While the evidence could lead the jury to discount defendant's manslaughter defense by finding that the provocation was not adequate—meaning they could find that it was unreasonable for a person who had an affair in the past to lose control upon finding their spouse having an affair and kill them in the heat of passion—this renders the evidence prejudicial for the very reason that it is probative. It does not render the evidence *unfairly* prejudicial.

Moreover, evidence is unfairly prejudicial when there "is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). Evidence is also unfairly prejudicial when "there exists a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury," or where "it would be inequitable to allow the proponent of the evidence to use it." *Mills*, 450 Mich at 75-76 (quotation marks and citation omitted). The risk that evidence of defendant's infidelity would unfairly prejudice defendant or mislead the jury was minimal, especially given the introduction of evidence of Wright's infidelities.

Further, to any extent that admitting evidence of defendant's infidelity caused a risk of unfair prejudice, that risk did not *substantially outweigh* the probative value of the evidence such that it should have been excluded under MRE 403. Even if this was a close question, under the abuse-of-discretion standard, we must affirm the trial court's decision to admit the evidence.

## B. PRIOR ACTS OF DOMESTIC VIOLENCE

Defendant next argues that evidence of his prior acts of alleged domestic violence was irrelevant under MRE 401, and unfairly prejudicial and misleading to the jury in violation of MRE 403. We disagree.

The prosecution offered evidence of defendant's prior incidents of domestic violence pursuant to MCL 768.27b, which provides:

Except as provided in subsection (4),[3] in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible *for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403*. [Emphasis added.]

Where MCL 768.27b applies, it supersedes MRE 404(b). See *People v Watkins*, 491 Mich 450, 476-477; 818 NW2d 296 (2012). Evidence introduced under MCL 768.27b may be considered to prove a defendant's character or propensity, so long as the evidence is relevant and does not violate MRE 403. *People v Railer*, 288 Mich App 213, 220-221; 792 NW2d 776 (2010). When making its determination under MRE 403 with respect to propensity evidence under MCL 768.27a, the trial court may consider the following nonexhaustive list of factors:

(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488 (citations omitted).]

At trial, the prosecution presented evidence of two prior incidents of domestic violence from 2010 and 2014 involving defendant and Wright. Regarding the 2010 incident, a witness testified that he was with Wright in her car at a park when defendant showed up and began a verbal confrontation. This witness saw pushing and shoving between defendant and Wright.[4] Regarding

---

[3] MCL 768.27b(4) provides that evidence of an act occurring more than 10 years before the charged offense is generally inadmissible under MCL 768.27b, with enumerated exceptions.

[4] These were the facts as testified to by the witness at trial, but the facts relied upon by the trial court in admitting the evidence were more detailed. See *People v Green*, 260 Mich App 710, 714; 680 NW2d 477 (2004) (explaining that this Court's review is based on the facts before the trial court when rendering its decision). The trial court relied on the statements made by the witness to police following the 2010 assault, as detailed in the police report. According to the report, the witness was with Wright in her car talking about her marital problems when defendant showed up, pulled Wright out of the vehicle, and began to choke and hit her. According to the police report, the witness tried to intervene, which caused defendant to turn his attention to the witness and try to hit him. The witness told police that defendant continued to try to hit him and assault Wright, but eventually the witness and Wright were able to get into the witness's vehicle and leave the area. Later in the day, the witness saw defendant again, and defendant made a gun gesture towards the witness. According to the report, the witness also said that he had spoken with defendant's brother, who told the witness that defendant was going to get a gun and shoot him. The report stated that the witness was provided with a Crime Victim's Rights form and follow up instructions, and the victim told police that he intended to seek a personal protection order against defendant.

the 2014 case, a detective testified that he responded to a call from Wright in which she said that she had been assaulted by defendant and was hiding in some bushes nearby. The detective observed Wright crying and saw fresh bruising on her face. The detective also spoke with defendant, who stated he assaulted Wright because she was cheating on him.

Both prior incidents involved defendant responding to supposed infidelity by Wright by allegedly assaulting her, and in the 2010 case, defendant tracked Wright down at a park. In this case, the prosecution presented evidence that defendant tracked Wright's location for two weeks leading up to the shooting and that he suspected she was meeting up with another man. These prior incidents of domestic violence were therefore probative of defendant's tendency to follow or track Wright and to react harshly and violently to her spending time with other men. Evidence of this prior history made it less likely that defendant acted in the heat of passion on April 13, 2018.

Admission of these other acts also did not violate MRE 403 because any risk of unfair prejudice and misleading the jury did not substantially outweigh the probative value of the evidence. With respect to the *Watkins* factors, the evidence tended to show that defendant had engaged in a pattern of abusive conduct prior to the shooting that, similar to the instant case, involved defendant's retaliation when he thought Wright was cheating on him. The use of the other-acts evidence also went to the central element of defendant's state of mind. Moreover, the trial court warned the jury that it could not convict the defendant solely on the basis that it thought he was guilty of other bad acts. The jury is presumed to follow the court's instructions. *People v Mette*, 243 Mich App 318, 330-331; 621 NW2d 713 (2000). The trial court did not abuse its discretion by allowing the jury to hear evidence that provided a fuller picture of defendant's course of conduct and that cast doubt upon his heat of passion defense.

## C. EXPERT TESTIMONY

Defendant lastly argues that he is entitled to a new trial because the use of the "Power and Control Wheel" and the domestic violence expert's testimony as a whole were irrelevant and unfairly prejudicial, and contravened holdings of our Supreme Court. We disagree.

"Demonstrative evidence is admissible when it aids the fact-finder in reaching a conclusion on a matter that is material to the case." *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003). As with all evidence, demonstrative evidence must satisfy MRE 401 through 403. *People v Unger*, 278 Mich App 210; 749 NW2d 272 (2008).

The trial court allowed admission of the "Power and Control Wheel" during the expert's testimony over defendant's objection. The expert described how power and control lies at the center of the wheel, and how the spokes—including economic abuse, emotional abuse, using children, and coercion and threats—are common ways that batterers maintain power and control over their victims. She testified that she had "never" worked with a batterer-victim relationship in which the tactics described in the wheel were not present.

Assuming without deciding that defendant is correct that admission of the "Power and Control Wheel" was error, he is not entitled to a new trial because admission of the evidence was not outcome-determinative. See *Lukity*, 460 Mich at 496. It was uncontested that defendant killed Wright, and there was compelling proof presented at trial to refute defendant's heat-of-passion

defense. Two weeks before the murder, defendant set up GPS tracking on Wright's car and began searching for the name of the man he suspected she was seeing. This evidence tended to show that defendant was aware of Wright's relationship with Moten prior to the night of the shooting. Further, in the hours after defendant found Wright at the motel with Moten, defendant followed them when they left the motel, was pulled over by officers, had his vehicle searched, then went to his home to retrieve a gun and returned to the motel. In total, about two hours passed between defendant discovering Wright and Moten at the motel and his firing shots into the motel room. This evidence negated that "there was not a lapse of time" between the provocation and the killing, as required for a manslaughter defense. *Mendoza*, 468 Mich at 535.

Defendant also argues that the expert's testimony violated the holding in *People v Christel*, 449 Mich 578, 579-580; 537 NW2d 194 (1995), because it was not offered to explain Wright's actions and implied that defendant was a batterer. We disagree.

In *Christel*, the Michigan Supreme Court held that expert testimony on battered-woman syndrome is admissible only when "relevant and helpful to the jury in evaluating a complainant's credibility." *Christel*, 449 Mich at 579-580. The Court further explained:

> [T]he expert may not opine whether the complainant is a battered woman, may not testify that defendant was a batterer or guilty of the instant charge, and may not comment on the complainant's truthfulness. Moreover, the trial court, when appropriate, may preclude expert testimony when the probative value of such testimony is substantially outweighed by the danger of unfair prejudice. [*Id*. at 580.]

Unlike in *Christel*, 449 Mich at 585, the expert in this case did not testify as an expert on battered-woman syndrome, nor did she once reference this diagnosis. Although the witness used the term "batterer," she was qualified as an expert on domestic violence and offered by the prosecution to explain how an abuser can engage in a pattern of power and control over a victim. She also did not imply that defendant was a batterer because she gave no testimony about specific acts or evidence in the case. Therefore, this case is distinguishable from *Christel*.

Defendant also argues that the principles announced by our Supreme Court in the consolidated cases of *People v Thorpe* and *People v Harbison*, 504 Mich 230, 235; 934 NW2d 693 (2019), apply to the scope of testimony given by the domestic violence expert in this case. In *Thorpe*, the Court held that "expert witnesses may not testify that children overwhelmingly do not lie when reporting sexual abuse." *Id*. In *Harbison*, the Court held that "examining physicians cannot testify that a complainant has been sexually assaulted or has been diagnosed with sexual abuse without physical evidence that corroborates the complainant's account." *Id*. The expert in this case did not diagnose or describe Wright as an abused spouse. Further, this case involves neither an allegation of abuse that lacks physical evidence nor an expert vouching for the victim's credibility.

### D.  DUE PROCESS

Finally, defendant argues that the introduction of inadmissible evidence rendered his trial so fundamentally unfair that he was denied due process. We disagree.

The United States and Michigan Constitutions provide a right to due process of law.  US Const, Ams V and XIV; Const 1963, art 1, § 17.  A criminal defendant's due-process rights include the right to a fair opportunity to defend against the prosecution's allegations.  *Chambers v Mississippi*, 410 US 284, 294; 93 S Ct 1038; 35 L Ed 2d 297 (1973).  The defense did not dispute the essential facts of this case: his retrieval of the weapon, his discharge of the weapon into the room he believed occupied by Wright and Moten, and the length of time between the initial encounter and the shooting.  Even if some of the lower court's decisions were erroneous, defendant cannot show that his trial was so fundamentally unfair that he was denied due process of law.

Affirmed.


/s/ Colleen A. O'Brien
/s/ Anica Letica