PEOPLE v CHRISTOPHER GREEN

Docket No. 244306. Submitted January 21, 2004, at Detroit. Decided February 26, 2004, at 9:00 A.M.

Christopher Green was bound over for trial in the St. Clair Circuit Court on a charge of fleeing and eluding a police officer in violation of MCL 750.479a. The court, James P. Adair, J., granted the defendant's motion to quash the information, finding that the officer was not in or near his officially identified police vehicle at the time he attempted to stop the defendant from leaving the parking lot of an apartment building where a search warrant was being executed. The prosecution appealed.

The Court of Appeals *held*:

MCL 750.479a(1) requires a driver of a motor vehicle, when given a visual or audible signal by a police officer, to bring his motor vehicle to a stop. The visual or audible signal may be given by hand, voice, emergency light, or siren. The statute does not require that this signal to the driver of a motor vehicle be given from within the officer's officially identified police vehicle. A voice or hand signal from an officer may occur in the course of the officer's duty on the street, not necessarily while the officer is in the official police vehicle. The defendant's conduct falls within the scope of the statute. The trial court erred in quashing the information.

Reversed and remanded.

CRIMINAL LAW — FLEEING AND ELUDING A POLICE OFFICER.

A driver of a motor vehicle, when given a visual or audible signal by a police officer by hand, voice, emergency light, or siren, must bring the motor vehicle to a stop; the officer giving the signal must be in uniform and the officer's vehicle must be identified as an official police vehicle, but there is no requirement that the police officer's signal to the driver of a motor vehicle be given from within the officer's officially identified police vehicle (MCL 750.479a[1]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Peter R. George*, Prosecuting Attorney, and *Timothy K. Morris*, Senior Assistant

Prosecuting Attorney, Chief of Appeals, for the people.

*Kenneth M. Lord* for the defendant.

Before: FORT HOOD, P.J., and BANDSTRA and METER, JJ.

PER CURIAM. The prosecution appeals as of right from the trial court's order granting defendant's motion to quash a charge of fleeing and eluding a police officer. MCL 750.479a.. We reverse and remand for proceedings consistent with this opinion.

On June 21, 2002, at approximately 9:30 P.M., Port Huron Police Officer Chris Frazier was at an apartment building at 1207 Glenwood Street where a search warrant for drugs was executed. That evening, Officer Frazier was in full uniform and was driving a fully marked police vehicle. Once the interior of the apartment to be searched was secured, Officer Frazier was instructed to secure the rear exit doors of the apartment building. At the rear of the apartment building was a driveway that led into an alleyway. Officer Frazier observed defendant drive a white Hyundai vehicle into the driveway from the alleyway. Defendant was driving toward the back of the building where the search warrant was being executed. Officer Frazier walked toward defendant's vehicle and told defendant to stop. The officer was a mere ten to twenty feet from defendant's vehicle at that time. Defendant tried to place his vehicle in reverse gear in an attempt to leave the scene, but the car kept stalling. Upon realizing that defendant was trying to leave, Officer Frazier "ran right up along his car, as he was backing away, and told him repeatedly, 'Stop, Police.'" Officer Frazier observed defendant through

the passenger side window. The officer's vehicle was in "very close proximity to [defendant] leaving the alleyway." Defendant placed his vehicle in reverse gear and drove right in front of Officer Frazier's patrol car. Defendant sped out of the alleyway and made a left turn, proceeding north on Elk Street. Officer Frazier pursued defendant on foot, then entered his patrol car after defendant drove past it. Defendant was stopped approximately six or seven blocks from the apartment building. Officer Frazier testified that it was standard procedure, for safety reasons, to stop anyone who comes to a home while a search warrant is being executed at the home.

On cross-examination, Officer Frazier testified that it was dusk at the time of the incident involving defendant. He testified that a vehicle that entered from the alleyway from the west side would not have seen his patrol car. Although Officer Frazier "probably" had a flashlight with him, there was sufficient lighting so that he did not need to use it. Officer Frazier was familiar with defendant because of prior contacts with defendant. Officer Frazier estimated that there had been four prior contacts within the last three to six months. On one occasion, defendant's vehicle was stopped by the police because it was allegedly involved in another crime. When the vehicle was stopped, crack cocaine and powdered cocaine were found on the passengers in defendant's vehicle. Defendant was arrested during that incident, but not during the other prior contacts.[1]

---

[1] Defense counsel was precluded from asking additional questions when the trial court cut off the questioning, noting that there was no reason to inquire about other incidents.

Officer Frazier acknowledged that the standard police uniform for the Port Huron Police Department consists of a dark pair of pants and a light-blue shirt. That day, Officer Frazier was wearing the duty uniform of a K-9 handler. This uniform is entirely navy blue and the shirt has the word "police" printed on it. He indicated the location of two patches that are sewn on the uniform shirt and noted that a metal badge is worn on the left front half of the shirt. Officer Frazier was wearing a baseball-style cap when this incident occurred. Officer Frazier testified that he initially told defendant to stop in a "normal tone," but began yelling and ordering him to stop when defendant started to leave the area. He also drew his weapon when he realized that defendant was rapidly leaving the parking area. Defendant was bound over on the charge of fleeing and eluding a police officer.

Defendant moved to quash the information. Defendant alleged that the police officer was not in a plainly marked vehicle at the time of the attempted stop, had no legal basis for the stop, and was not in a clearly marked police uniform as required by the statute. The prosecutor alleged that, under the totality of the circumstances, there was sufficient evidence of the elements of the charge to present the case to the jury as the trier of fact. The trial court granted the motion to quash on the basis of the fact that Officer Frazier was not in or near his police vehicle at the time defendant left the area.

A district court's decision to bind a defendant over for trial will not be disturbed absent an abuse of discretion. *People v Justice (After Remand)*, 454 Mich 334, 344; 562 NW2d 652 (1997). On review, the circuit court is limited to the entire record of the preliminary

examination and may not substitute its judgment for that of the district court. *People v Orzame*, 224 Mich App 551, 557; 570 NW2d 118 (1997). The circuit court may reverse the district court decision only if there appears to be an abuse of discretion. *Id.* This Court, in turn, reviews the circuit court's decision de novo to determine if the district court abused its discretion. *Id.* An abuse of discretion occurs when an unbiased person reviewing the same facts before the trial court would conclude that there was no justification for the court's ruling. *People v Hendrickson*, 459 Mich 229, 235; 586 NW2d 906 (1998). However, whether alleged conduct falls within the statutory scope of MCL 750.479a involves a question of law that is reviewed de novo. *People v Grayer*, 235 Mich App 737, 739; 599 NW2d 527 (1999).

This issue involves examination of the statute prohibiting fleeing and eluding a police officer, MCL 750.479a. Statutory interpretation presents a question of law that we review de novo. *People v Nimeth*, 236 Mich App 616, 620; 601 NW2d 393 (1999). The function of a reviewing court resolving disputed interpretations of statutory language is to effectuate the legislative intent. *People v Valentin*, 457 Mich 1, 5; 577 NW2d 73 (1998). When the language of the statute is clear, the Legislature intended the meaning plainly expressed, and the statute must be enforced as written. *Id.* We presume that every word has some meaning, and we must avoid any construction that would render any part of the statute surplusage or nugatory. *People v Borchard-Ruhland*, 460 Mich 278, 285; 597 NW2d 1 (1999). To discover legislative intent, provisions of a statute must be read in the context of the entire statute to produce, if possible, a harmonious

and consistent whole. *Michigan ex rel Wayne Co Prosecutor v Bennis*, 447 Mich 719, 732; 527 NW2d 483 (1994), aff'd 516 US 442 (1996). The fair and natural import of the terms of the statute, in view of the subject matter of the law, is what should govern. *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999). Where terms are not expressly defined within a statute, the courts may turn to dictionary definitions to aid the goal of construing terms in accordance with their plain and generally accepted meanings. *Id.* The legislative history of an act may be examined to ascertain the reason for the act and the meaning of its provisions. *In re Seymour Estate*, 258 Mich App 249, 254; 671 NW2d 109 (2003). Legislative history is valuable when it shows an intent to repudiate a judicial construction or considers alternatives in statutory language. *In re Certified Question*, 468 Mich 109, 115 n 5; 659 NW2d 597 (2003). However, legislative history is afforded little significance when it is not an official view of the legislators, and legislative history may not be utilized to create an ambiguity where one does not otherwise exist. *Id.*

The text of MCL 750.479a, before its amendment in 1988, provided, in relevant part, as follows:

> A driver of a motor vehicle, who is given by hand, voice, emergency light or siren a visual or audible signal by a police officer, acting in the lawful performance of his duty, directing the driver to bring his motor vehicle to a stop, and who wilfully fails to obey such direction, by increasing his speed, extinguishing his lights, or otherwise attempting to flee or elude the officer, is guilty of a misdemeanor, punishable by a fine not to exceed $1,000.00 or by imprisonment for not more than 1 year, or both. The officer giving the signal shall be in uniform; and a vehicle driven at night shall be adequately identified as an official police vehicle.

In 1988, MCL 750.479a was amended by 1988 PA 407,
§ 1, effective March 30, 1989, to provide as follows:

> (1) A driver of a motor vehicle who is given by hand,
> voice, emergency light, or siren a visual or audible signal by
> a police or conservation officer, acting in the lawful per-
> formance of his or her duty, directing the driver to bring his
> or her motor vehicle to a stop, and who willfully fails to
> obey that direction by increasing the speed of the vehicle,
> extinguishing the lights of the vehicle, or otherwise attempt-
> ing to flee or elude the police or conservation officer, is
> guilty of a misdemeanor, and shall be punished by impris-
> onment for not less than 30 days nor more than 1 year, and,
> in addition, may be fined not more than $1,000.00 and may
> be ordered to pay the costs of prosecution. The court may
> depart from the minimum term of imprisonment authorized
> under this subsection if the court finds on the record that
> there are substantial and compelling reasons to do so and if
> the court imposes community service as a part of the
> sentence.
>
> (2) Subsection (1) does not apply unless the police or
> conservation officer giving the signal is in uniform, and *the
> vehicle driven* by the police or conservation officer is iden-
> tified as an official police or department of natural
> resources vehicle. [Emphasis added.]

MCL 750.479a was further amended in 1996 by 1996
PA 586, § 1, effective June 1, 1997. It was again
amended in 1998[2] by 1998 PA 344, effective October 1,
1999, to provide, in relevant part:

> (1) A driver of a motor vehicle who is given by hand,
> voice, emergency light, or siren a visual or audible signal by
> a police or conservation officer, acting in the lawful per-
> formance of his or her duty, directing the driver to bring his
> or her motor vehicle to a stop shall not willfully fail to obey

---

[2] The statute was also amended in 2002, however, that amendment did
not address the statutory subsection at issue in this case.

that direction by increasing the speed of the vehicle, extinguishing the lights of the vehicle, or otherwise attempting to flee or elude the police or conservation officer. This subsection does not apply unless the police or conservation officer giving the signal is in uniform and the officer's vehicle is identified as an official police or department of natural resources vehicle.

(2) Except as provided in subsection (3), (4), or (5), an individual who violates subsection (1) is guilty of fourth-degree fleeing and eluding, a felony punishable by imprisonment for not more than 2 years or a fine of not more than $500.00, or both.

Review of the plain language of MCL 750.479a(1) reveals that a driver of a motor vehicle, when given a visual or audible signal by a police officer, must bring the motor vehicle to a stop. *Valentin, supra.* This visual or audible signal may be given by hand, voice, emergency light, or siren. MCL 750.479a(1). The plain language of the statute does not require that this signal to the driver of a motor vehicle be given *from within* the officer's officially identified police vehicle. *Id.; Valentin, supra.*

Furthermore, examination of the history of the statutory amendments made by the Legislature reveals that there is no intent to require that a police officer be present in the officially identified vehicle to fulfill the current elements of fleeing and eluding. *In re Certified Question, supra.* MCL 750.479a, following the 1988 amendments, expressly stated that the statute did not apply unless the officer gave the signal while in uniform and "the vehicle driven" by the officer was identified as an official police vehicle. "Drive" is defined as "to send, expel, or otherwise cause to move by force or compulsion," "to cause and guide the movement of a vehicle or animal, esp. to operate

a vehicle," or "to go or travel in a driven vehicle." *Random House Webster's College Dictionary* (2d ed, 2000), p 403. However, the 1998 amendment of MCL 750.479a(1) removed the language requiring that the "vehicle driven" must be identified. Rather, the current form of the fleeing and eluding statute merely requires that the officer giving the signal be in uniform and that the officer's vehicle must be identified as an official police vehicle. MCL 750.479a(1). The fair and natural import of the statute in light of the subject matter, *Morey, supra,* recognizes that a voice or hand signal from an officer may occur in the course of duty on the street, not necessarily while the officer is driving in the official police vehicle. Furthermore, while a police vehicle must be visibly identified as a police vehicle, the Legislature has not in the current version of the statute placed any restriction on the time frame regarding the observation or the location of the officially marked police vehicle in relationship to the officer's signal to stop. It follows that, if the signal occurs by emergency light or siren, that signal must come from an officially identified police vehicle in order to hold a driver accountable for the offense of fleeing and eluding. Reading the statute in context to produce a harmonious and consistent whole, the type of signal given and the context in which it occurs determines the propriety of bringing a charge of fleeing and eluding. *Bennis, supra.*

Thus, in the present case, defendant was given a voice signal to stop by an officer in uniform. When defendant prepared to drive away, the officer ran up to defendant's vehicle, reiterated the command to stop, and verbally notified defendant that he was a police officer. Moreover, defendant's flight from the

scene caused defendant to pass the officer's officially marked vehicle. Under the circumstances, the alleged conduct falls within the scope of MCL 750.479a(1), and the trial court erred in granting defendant's motion to quash. *Grayer, supra.* Defendant's challenge to the elements of the offense and the requisite intent under the circumstances, see *People v Abramski,* 257 Mich App 71, 73; 665 NW2d 501 (2003), present questions for the trier of fact. *Grayer, supra.*[3] Therefore, the trial court erred in granting defendant's motion to quash based on the officer's location in relationship to his officially marked police vehicle.

In opposition to reinstatement of the charges on appeal, defendant challenges the sufficiency of the officer's uniform, noting that his uniform was com-

---

[3] Published case law addressing the fleeing and eluding statute has not addressed the statute in its current form. In *Grayer, supra,* this Court held that the statute did not require that the defendant attain a certain level of speed or travel a certain distance. The fact that the defendant ignored the officer's activation of his emergency lights and sirens coupled with the defendant's acceleration of his vehicle in excess of the speed limit was found to be sufficient evidence of intent to elude to present to the trier of fact. *Grayer, supra* at 743-744. We reversed the trial court's order quashing the fleeing and eluding charge and remanded for a trial. Following his conviction on remand, the defendant challenged the sufficiency of the evidence to support the conviction, claiming that he did not hear a siren and that the officer activated his lights shortly before defendant arrived at his home. *People v Grayer,* 252 Mich App 349, 350-352; 651 NW2d 818 (2002). This Court rejected the challenge to the sufficiency of the evidence, concluding that a rational trier of fact could find the essential elements were proved beyond a reasonable doubt that the defendant attempted to flee and avoid capture where he sped for a short time, made a sharp turn close to his home, left the vehicle and ran from the police, then stopped and tried to convince the police that they were searching for a different individual. *Id.* at 355-356. These cases demonstrate that a conviction for the crime of fleeing and eluding a police officer will be contingent on the facts and circumstances in each case, and there must be sufficient indicia through the police uniform and vehicle that the person making the stop is, in fact, a police officer. See *People v McKinley,* 255 Mich App 20, 30; 661 NW2d 599 (2003).

pletely navy blue, unlike the typical uniform of a Port Huron Police Officer.[4] The plain language of the statute at issue merely provides that the officer must be in uniform. *Valentin, supra.* It does not contain any minimum requirements for an officer's uniform. In the present case, Officer Frazier testified that his uniform contained the same markings as the standard police uniform, but his shirt was navy blue instead of light blue. Thus, defendant's challenge to the sufficiency of the uniform with regard to his knowledge and intent presents a question for the trier of fact.[5] Lastly, defendant's challenge to the officer's "lawful performance" of his duty in ordering the stop is without merit. Officers are not required to take unnecessary risks in the performance of their duties, and a balance must be struck between the public interest and interference by law officers. *People v Otto*, 91 Mich App 444, 449-451; 284 NW2d 273 (1979). Under the circumstances of the execution of a search warrant for drugs and for the safety of the officers during the

---

[4] The trial court did not decide the claims raised by defendant as alternative grounds to quash the information. For reasons of judicial economy, we nonetheless address them. MCR 7.216(A)(7).

[5] See also *People v Davis*, unpublished opinion per curiam of the Court of Appeals, issued May 22, 2003 (Docket No. 237601). In that case, the defendant challenged the sufficiency of the evidence in support of his fleeing and eluding conviction on the basis of the police officers' uniforms. This Court held that, although the officers were not wearing uniforms as required by the statute, their blue, nylon jackets with the word "POLICE" on the front and back in white letters was sufficient evidence for the jury to conclude that the uniform requirement was satisfied. More importantly, this Court held that whether the officers were wearing uniforms did not present a legal question, but rather a factual issue for resolution by the jury. Although unpublished opinions are not binding precedent, MCR 7.215(C)(1), we utilize it as a guide and view it as persuasive in light of the limited case law in this area. Thus, defendant, in the present case, may challenge the sufficiency of the officer's uniform before the jury.

execution, the stop during the course of the officer's duty in accordance with police procedure for execution of search warrants was permissible. See *Michigan v Summers*, 452 US 692, 699-700; 101 S Ct 2587; 69 L Ed 2d 340 (1981).

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.