*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES STEVENSON,

      Plaintiff-Appellant,

v

SARAH NEUBAR and CARL NEUBAR,

      Defendants-Appellees.

UNPUBLISHED
March 4, 2021

No. 351886
Washtenaw Circuit Court
LC No. 19-000099-NI

Before: SWARTZLE, P.J., and MARKEY and TUKEL, JJ.

PER CURIAM.

In this case, brought under the no-fault insurance act, MCL 500.3101 *et seq.*, plaintiff appeals as of right the trial court's order granting summary disposition to defendants, Sarah Neubar and Carl Neubar. On appeal, plaintiff argues that the trial court erred by granting summary disposition to defendants because there was a question of fact regarding whether plaintiff's wrist injury affected his ability to lead his normal life. We agree and reverse the trial court's order granting summary disposition to defendants.

## I. UNDERLYING FACTS

Plaintiff and Sarah were involved in a motor vehicle accident after Sarah failed to yield the right-of-way to plaintiff. After the accident, plaintiff went to the emergency room where medical staff determined that plaintiff had a broken wrist. Plaintiff was placed in a cast for eight weeks, and then required physical therapy. After completing physical therapy, plaintiff was not placed on any medical restrictions. As a result of his wrist injury, plaintiff was unable to go to class for approximately five weeks because of his inability to type on a computer, and he required assistance to perform his duties at work; plaintiff's ability to participate in his leisure activities, such as lifting

weights, playing hockey and golf, and bowling were also affected.[1] Plaintiff additionally required help around the house to care for his two young children and when performing household chores.

Plaintiff filed a complaint seeking damages. Defendants eventually moved for summary disposition pursuant to MCR 2.116(C)(10). Defendants argued that plaintiff's injuries as alleged did not meet the threshold requirement of the no-fault act; specifically, they argued that plaintiff had not suffered a serious impairment of body function. Plaintiff responded and disagreed. The trial court ultimately agreed with defendants and granted summary disposition to them. This appeal followed.

## II. STANDARD OF REVIEW

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a complaint and is reviewed de novo. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "Only the substantively admissible evidence actually proffered may be considered." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009) (quotation marks and citation omitted). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016). Finally, "[w]e review de novo questions of statutory interpretation." *Hayford v Hayford*, 279 Mich App 324, 325-326; 760 NW2d 503 (2008).

## III. ANALYSIS

"Tort liability is limited under the Michigan no-fault insurance act." *Patrick*, 322 Mich App at 606, citing *McCormick v Carrier*, 487 Mich 180, 189; 795 NW2d 517 (2010). Under MCL 500.3135(1), a "person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." The parties agree that the only possible basis of liability for noneconomic loss is whether plaintiff suffered a serious impairment of body function as a result of the accident.

Our Supreme Court has established a three-part test to determine when a plaintiff has suffered a serious impairment of body function. That test requires a plaintiff to establish:

---

[1] Throughout this opinion, given the nature of the record, when we state the duration of plaintiff's inability to perform a particular activity, the length of time which we state is approximate.

(1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living). [*McCormick*, 487 Mich at 215.]

This test was later codified by our Legislature in MCL 500.3135(5), defining a "serious impairment of body function" as an impairment that satisfies all of the following requirements:

(a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.

(b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.

(c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident.

As explained by the *McCormick* Court, "when considering an impairment, the focus is not on the injuries themselves, but how the injuries affected a particular body function." *McCormick*, 487 Mich at 197 (citation and quotation marks omitted). "Although mere subjective complaints of pain and suffering are insufficient to show impairment, evidence of a physical basis for that pain and suffering may be introduced to show that the impairment is objectively manifested. Medical testimony is generally, but not always, required to make this showing." *Patrick*, 322 Mich App at 607. Furthermore, "[i]f there is no factual dispute, or no material factual dispute," regarding the extent of a plaintiff's injuries "then whether the threshold is met is a question of law for the court." *McCormick*, 487 Mich at 215.

In analyzing whether an injury has affected a plaintiff's ability to lead his or her normal life, this Court compares the plaintiff's life before and after the injury. *Nelson v Dubose*, 291 Mich App 496, 499; 806 NW2d 333 (2011). A plaintiff's general ability to lead his or her normal life only needs to be "affected, not destroyed." *McCormick*, 487 Mich at 202. "[C]ourts should consider not only whether the impairment has led the person to completely cease a pre-incident activity or lifestyle element, but also whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected." *Id*. "Additionally, the statute only requires that some of the person's *ability* to live in his or her normal manner of living has been affected, not that some of the person's normal manner of living has itself been affected." *Piccione v Gillette*, 327 Mich App 16, 21; 932 NW2d 197 (2019) (quotations marks and citation omitted). Finally, "there is no 'express temporal requirement as to how long an impairment must last in order to have an effect on the person's general ability to live his or her normal life.' " *Id*., quoting *McCormack*, 487 Mich at 203. See also MCL 500.3135(5)(c)

("Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last.").

Under these rules, plaintiff's temporary inability to participate in school, hockey, bowling, golf, household chores, childcare, and his having to make adjustments at work makes summary disposition inappropriate, because viewing those effects in the light most favorable to plaintiff demonstrates that the injuries are intertwined with questions of fact as to whether they affected plaintiff's ability to lead his normal life for various periods of time.[2]

Plaintiff's broken wrist did not destroy his ability to lead his normal life, but it did affect it. Plaintiff missed classes for five weeks because of his inability to type and use a computer. Similarly, plaintiff was unable to fully perform his work duties for multiple weeks, and he had to adjust to working on a computer with one hand and was required by the injury to ask his coworkers for help. His in-laws had to take over child care for him for a month. Thus, while plaintiff did not miss any days of work, a jury could nevertheless conclude that his ability to perform his work functions was impaired as a result of serious body impairment. Additionally, plaintiff was unable to lift weights for four months as he regularly had before the accident; at the time of his deposition, plaintiff had resumed lifting weights but was still lifting about 50 pounds less than he was before the accident. Furthermore, plaintiff was unable to play in his hockey league for four months under doctors' orders, and he did not play for an additional month after that. Plaintiff also limited his golfing and bowling activities because of his wrist injury.

Plaintiff had essentially returned to normal seven months after the accident, when he was deposed, and arguably had resumed his normal activities three months after the injury, although at

_____

[2] At the hearing on the motion for summary disposition, defendant began by stating "[Plaintiff] suffered a fracture of the right distal radius and ulnar styloid. That's his injury. We don't dispute that that's an objectively manifested injury." That statement was a concession that plaintiff suffered a serious impairment of an important body function which was of great value, significance, or consequence to plaintiff; at oral argument in this Court, defendants confirmed that they were contesting only the third prong of the *McCormick* test, viz., whether the injury affected plaintiff's ability to lead his normal life. Yet, despite the concession which was made both at the trial court level and on appeal, the trial court stated tersely that it "agrees with Defense there is a failure to be able to establish a threshold injury in the -- viewed in the light of the test of modern jurisprudence and the case law that has developed. I do find that he has not suffered, as a matter of law, a threshold injury[.]" The trial court's statement is confusing, because the term "threshold" can refer to the physical injury alone, or to the three elements which together meet the statutory definition of "serious impairment of a bodily function." See MCL 500.3135(5)(a)-(c); *McCormick* 487 Mich at 215 and 215 n 27.

The trial court did not parse what it meant by the threshold issue; but to the extent that it viewed the wrist injury itself as insufficiently objectively manifested, or lacking in great value, significance, or consequence to plaintiff, it did so in contravention of defendants' concession. A fuller explanation by the trial court of its analysis would have been helpful to the parties and this Court.

the time of his deposition he still complained of weakness and wore a wrist brace. The effect of the serious impairment may have been of relatively short duration, which "may be relevant," yet "there is no temporal requirement for how long an impairment must last." MCL 500.3135(5)(c). Consequently, viewing these facts in the light most favorable to plaintiff, a jury could conclude that plaintiff's general ability to lead his normal life was affected for some period of time by the serious body impairment. See *Piccione*, 327 Mich App at 22. As applicable here, if the jury finds that the impairment affected plaintiff's ability to lead his normal life, the duration of any such impairment goes to the amount of damages to which plaintiff might be entitled, not to whether he is entitled to damages at all.

Finally, both parties address multiple unpublished opinions by this Court in their briefs on appeal. Unpublished cases have no precedential authority[3] and published cases have clearly established the factors we are to use when determining whether a serious impairment of body function exists in a given case. Consequently, we find it unavailing to consider these unpublished opinions. See MCR 7.215(C)(1) ("An unpublished opinion is not precedentially binding under the rule of stare decisis. Unpublished opinions should not be cited for propositions of law for which there is published authority. If a party cites an unpublished opinion, the party shall explain the reason for citing it and how it is relevant to the issues presented.").

## IV. CONCLUSION

For the reasons stated in this opinion, plaintiff presented sufficient evidence from which a rational jury could find a serious impairment of a body function. Consequently, the trial court's order granting summary disposition to defendants is reversed, and we remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Brock A. Swartzle
/s/ Jane E. Markey
/s/ Jonathan Tukel

---

[3] "An unpublished opinion is not precedentially binding under the rule of stare decisis." MCR 7.215(C)(1). However, unpublished opinions can be instructive or persuasive. *People v Green*, 260 Mich App 710, 720 n 5; 680 NW2d 477 (2004)