*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

STEVEN RUSSELL BRCIC,

        Defendant-Appellee.

FOR PUBLICATION
July 14, 2022
9:10 a.m.

No. 359497
Cheboygan Circuit Court
LC No. 20-006006-FH

Before: GLEICHER, C.J., and GADOLA and YATES, JJ.

YATES, J.

On July 14, 2020, a bizarre chain of events led Defendant, Steven Brcic, to take refuge in the Indian River and refuse commands from law enforcement officers to get out of the water. In his wake, defendant left an overturned Chevy Tahoe sitting on its passenger's side in the middle of Prospect Street and three young witnesses who helped the police track down defendant. The officers who used a boat to extract defendant from the river observed that defendant exhibited the telltale signs of intoxication, so they obtained a search warrant for a blood draw. But the warrant simply authorized a "blood draw" at the "Cheboygan County Jail." Because the search warrant failed to identify the jail inmate whose blood should be drawn, the trial court declared the warrant defective and suppressed the fruits of the search, i.e., the blood taken from defendant. We granted the prosecution's application for leave to pursue an interlocutory appeal, and we now affirm the trial court's order of suppression.

## I. FACTUAL BACKGROUND

The salient facts are set forth in the affidavit submitted in support of the application for a search warrant:

> On Tuesday, July 14, 2020, at 2000 hrs., Ofc. Chamberlain and I (Ofc. Myerson) were dispatched to car accident [sic] on Prospect St., towards Columbus Beach. Upon arrival, I observed a silver Tahoe, on it's [sic] passenger side. I did not observe anyone in or near the vehicle. Three juveniles walked up to us on scene and said a male in his 30-40's wearing a green and tan baseball hat [was] driving a silver SUV westbound on Prospect St. The driver, later identified as Steven Russell

Brcic, swerved toward the juveniles. They said he was the only occupant and he yelled, "asshole" as he swerved back into the lane. Seconds later they heard the crash. While on scene, Ofc. Chamberlain ordered Brcic to stop, however Brcic jumped into the river and refused to exit. Brcic had large and fixed pupils, bloodshot and glassy eyes and spoke with very slurred speech. While following Brcic down the river, the juveniles positively identified Brcic. Deputies Simmons and Supernault obtained the CCSD patrol boat and eventually pulled Brcic out and he was handcuffed. Open and half full 24 ounce beer can was found inside the vehicle. Brcic refused to perform field sobriety tasks. Brcic had very poor balance and had a very strong odor of alcoholic based beverage coming from his breath and person.

Officer Janet Myerson indicated on the affidavit form that she personally observed defendant and believed he operated the vehicle "[w]hile under the influence of or impaired by alcoholic liquor." That conclusion was buttressed by a wealth of information, and defendant seems to recognize that the affidavit supplied probable cause to support Officer Myerson's assertion.

The affidavit prompted the issuance of a search warrant for a "blood sample," but the search warrant merely described "[t]he person, place or thing to be searched" as the "Cheboygan County Jail." Beyond that, the search warrant provided no guidance about whose blood should be drawn. In its entirety, the search warrant issued at 2:17 a.m. on July 15, 2020, stated that probable cause for a search existed, but offered no specificity other than a directive to execute the warrant at the Cheboygan County Jail. The search warrant reproduced below readily reveals the flaw that led to suppression of the blood drawn from defendant:

| STATE OF MICHIGAN 89th JUDICIAL DISTRICT | SEARCH WARRANT | CASE NO. |
|---|---|---|

**TO THE SHERIFF OR ANY POLICE OFFICER:**   Police Agency: Tuscarora Twp Police Department

Report Number: 1170-20

, has sworn to the attached affidavit regarding the following:

1. The person, place or thing to be searched is described as and is located at:
   Cheboygan County Jail

2. The PROPERTY to be searched for and seized, if found, is specifically described as:
   ☑ A blood sample.
   ☐ All alcoholic beverages and containers.
   ☐ All suspected controlled substances and containers.
   ☐ Other:

IN THE NAME OF THE PEOPLE OF THE STATE OF MICHIGAN: I have found that probable cause exists and you are commanded to make the search and seize the described property. Leave a copy of this warrant with affidavit attached and a tabulation (a written inventory) of all property taken with the person whom the property was taken or at the premises. You are further commanded to promptly return this warrant and tabulation to the court.

Issued Date: 7-15-20                          Judge/Magistrate   2:17am   Bar No.

-2-

In the wee hours of July 15, 2020, a law enforcement officer executed the search warrant and obtained two vials of blood from defendant. The "Return and Tabulation" section indicated that defendant received a copy of the affidavit, warrant, and tabulation. The Cheboygan County Prosecutor thereafter charged defendant with operating while intoxicated, third offense (OWI-III), MCL 257.625(1) and (9)(c); five separate offenses of assaulting, resisting, or obstructing a police officer, MCL 750.81d; operating a vehicle with a suspended or revoked license, second offense, MCL 257.904(1) and (3)(b); failure to report an accident, MCL 257.622; and maintaining an open container of alcohol in a vehicle, MCL 257.624a, with a fourth-offense habitual offender notice, MCL 769.12. Defendant moved to suppress the blood-draw evidence, contending that the warrant failed to particularly describe the place to be searched and the items to be seized. In response, the prosecution argued that the warrant was proper when read in combination with the affidavit. In a written order, the trial court agreed with defendant and suppressed the blood-draw evidence. That prompted the prosecution to seek leave to pursue an interlocutory appeal, which we granted. See *People v Brcic*, unpublished order of the Court of Appeals, entered March 1, 2022 (Docket No. 359497). As a result, we must now decide whether the trial court properly suppressed the blood-draw evidence.

## II. LEGAL ANALYSIS

The prosecution contends that the trial court erred by considering the validity of the search warrant in isolation, rather than in combination with the supporting affidavit, and by concluding that the warrant and affidavit failed to meet the particularity requirement of the Fourth Amendment to the United States Constitution.[1] This Court reviews de novo questions of constitutional law and a trial court's decision on a motion to suppress evidence. *People v Joly*, 336 Mich App 388, 395; 970 NW2d 426 (2021). The Fourth Amendment guarantees to the people the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" US Const, Am IV. It further states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id*. Similarly, the Michigan Constitution of 1963 provides that "[t]he person, houses, papers, possessions, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures," and "[n]o warrant to search any place or to seize any person or things or to access electronic data or electronic communications shall issue without describing them, nor without probable cause, supported by oath or affirmation." Const 1963, art 1, § 11. Absent a compelling reason, Michigan courts must construe Const 1963, art 1, § 11 to provide the same protection as that secured by the Fourth Amendment. *People v Slaughter*, 489 Mich 302, 311; 803 NW2d 171 (2011).

---

[1] The prosecution also appears to argue in passing that the fruits of the warrant-based search may be saved from suppression by the good-faith exception to the requirement of a valid search warrant. See *United States v Leon*, 468 US 897, 916-919; 104 S Ct 3405; 82 L Ed 2d 677 (1984); *People v Debruyne*, 505 Mich 957, 833; 936 NW2d 830 (2020). Because the prosecution did not advance the good-faith exception in its application for leave to appeal and its supporting brief, this argument is outside the bounds of the order granting leave to appeal. See *Brcic*, unpub order.

"[T]he general rule is that officers must obtain a warrant for a search to be reasonable under the Fourth Amendment." *People v Hughes*, 506 Mich 512, 525; 958 NW2d 98 (2020). The Fourth Amendment only allows search warrants "particularly describing the place to be searched, and the persons or things to be seized." US Const, Am IV. "The purpose of the particularity requirement in the description of items to be seized is to provide reasonable guidance to the executing officers and to prevent their exercise of undirected discretion in determining what is subject to seizure." *People v Unger*, 278 Mich App 210, 245; 749 NW2d 272 (2008) (quotation marks and citation omitted). A search warrant is sufficiently particular "if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify" the people and property subject to the warrant. *Steele v United States*, 267 US 498, 503; 45 S Ct 414; 69 L Ed 757 (1925). Whether a search warrant satisfies the particularity requirement depends on the circumstances and the types of items involved. *Id*.; *Unger*, 278 Mich App at 245. It is "well settled that a search may not stand on a general warrant." *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004).

The search warrant at issue in this case was "plainly invalid." See *Groh v Ramirez*, 540 US 551, 557; 124 S Ct 1284; 157 L Ed 2d 1068 (2004) (search warrant "plainly invalid" because it failed to describe "the type of evidence sought"). The warrant did not identify defendant and ostensibly authorized a blood draw from any inmate at the Cheboygan County Jail. Indeed, the prosecution does not dispute that the search warrant, standing alone, did not satisfy the particularity requirement. Instead, the prosecution contends that the warrant incorporated by reference Officer Myerson's affidavit for a search warrant. The prosecution argues that the two documents together met the particularity requirement because the affidavit identified defendant and detailed the police investigation of his alleged criminal acts. But "[t]he fact that the *application* adequately described the 'things to be seized' does not save the *warrant* from its facial invalidity." *Id*. "The presence of a search warrant serves a high function," which "is not necessarily vindicated when some other document, somewhere, says something about the objects of the search[.]" *Id*. (quotation marks and citation omitted).

Nonetheless, the prosecution correctly asserts that a facially invalid search warrant *may* be saved by incorporated documents. *Id*. at 557-558. As the *Groh* Court acknowledged, most federal "Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Id*. As our Supreme Court recently noted, however, what constitutes "appropriate words of incorporation" appears to be a puzzling question. See *People v Hughes*, 506 Mich 512, 543-544 n 15; 958 NW2d 98 (2021).

We agree with a recent panel of this Court that "appropriate words of incorporation" must direct the officers executing a search warrant to refer to an affidavit for guidance and not merely state an affidavit was used to establish probable cause. *People v Mustafa*, unpublished opinion of the Court of Appeals, issued June 17, 2021 (Docket No. 355153), p 6.[2] As the *Mustafa* panel did,

---

[2] Although our unpublished opinions are not binding, this Court may consider the reasoning in an unpublished opinion if it is persuasive. *People v Green*, 260 Mich App 710, 720 n 5; 680 NW2d 477 (2004); MCR 7.215(C)(1).

we find persuasive the holdings of the United States Court of Appeals for the Eighth Circuit in *United States v Szczerba*, 897 F3d 929, 937 (CA 8, 2018), that "a warrant does not incorporate a supporting affidavit when it merely states that the affidavit establishes probable cause" and the Second Circuit in *United States v George*, 975 F2d 72, 75-76 (CA 2, 1992), that a recitation in a warrant "issued upon the basis of an application and affidavit" did "not direct the executing officers to refer to the affidavit for guidance concerning the scope of the search" and therefore did "not amount to incorporation by reference."[3]

In our case, the search warrant at issue does not direct the executing officer to refer to the affidavit. Instead, the search warrant simply states in preprinted terms that "     , has sworn to the attached affidavit" and directs the executing officer to "[l]eave a copy of this warrant with affidavit attached . . . with the person whom [sic] the property was taken or at the premises." The warrant's author made no affirmative or explicit references to the affidavit. Accordingly, as the United States Court of Appeals for the Third Circuit observed when confronted with a search warrant similar to the warrant in our case, "the only two references to the affidavit failed to incorporate expressly the affidavit into the warrant's description of the items to be searched for and seized if found." *United States v Tracey*, 597 F3d 140, 148 (CA 3, 2010). Thus, the warrant did not include "appropriate words of incorporation" and cannot be saved by Officer Myerson's affidavit for the search warrant.

Our conclusion is also bolstered by a review of additional federal caselaw. In *United States v Maxwell*, 287 US App DC 234, 238; 920 F2d 1028 (1990), for example, the United States Court of Appeals for the District of Columbia stated that, "[a]lthough there is little case law specifically addressing what suffices to incorporate an affidavit into a warrant by reference, we believe that something more is required than a boilerplate statement that the affidavit or affidavits presented to the magistrate constitute probable cause for issuing the warrant[.]" The *Maxwell* court noted that judges have "long recognized" "a fundamental distinction between the warrant and the underlying affidavit" and have insisted that incorporation of an affidavit requires that the affidavit be attached to the warrant and that there must be evidence of "the magistrate's explicit intention to incorporate the affidavit." *Id*. In *Maxwell*, "[t]he magistrate accomplished this incorporation by typing, in the places provided on the warrant for describing the premises to be searched and the items to be seized, 'Attachment #1' and 'Attachment #2' respectively, thereby referencing the first two attachments to the search warrant application filed with the magistrate." *Id*. at 237 n 1. But the *Maxwell* court held that the warrant did not incorporate a three-page affidavit. *Id*. at 237-238. It explained:

> The warrant did state, in preprinted language, that the agent presented an affidavit to the issuing magistrate and that the magistrate "was satisfied that the affidavits(s) . . . establish probable cause" justifying issuance of a warrant, but there were no explicit words on the warrant indicating that the magistrate intended to

---

[3] Although lower federal court decisions are not binding on state courts, they may be persuasive. See *Abela v GMC*, 469 Mich 603, 606-607; 677 NW2d 325 (2004).

incorporate the contents of the affidavit into the warrant and thereby limit its scope by reference to the affidavit[.]  [*Id.* at 238.]

The *Maxwell* court noted that the warrant would have incorporated the affidavit if, in addition to referring to "Attachment #2" in the space for describing the items to be seized, the warrant had also made some reference to the affidavit.  *Id.* at 239 n 4.[4]

To sum up the law, "appropriate words of incorporation" are limited to phrases that reflect the magistrate's explicit intention to incorporate an affidavit or other supporting document for the purpose of providing particularity in describing the place to be searched and the items to be seized under the authority of a search warrant.  In this case, the search warrant itself was plainly invalid, and although it referenced the "attached affidavit," it did not otherwise direct the executing officer to refer to that additional document for such a purpose.  Accordingly, the information provided in the affidavit cannot be used to save the plainly invalid search warrant from its lack of particularity as to the place to be searched and the items to be seized.

Affirmed.

/s/ Christopher P. Yates
/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola

---

[4] Several other federal circuit courts have ruled similarly.  In *Baranski v Fifteen Unknown Agents of Bureau of Alcohol, Tobacco & Firearms*, 452 F3d 433, 439 (CA 6, 2006), the Sixth Circuit concluded that the warrant incorporated the affidavit when the warrant, in the space provided for identifying the items to be seized, instructed "[s]ee Attached Affidavit."  In *United States v Johnson*, 541 F2d 1311, 1313, 1315-1316 (CA 8, 1976), the Eighth Circuit determined that the warrant incorporated an affidavit when it provided that the officers were to seize "U.S. currency as described in the affidavit."  And in *Tracey*, 597 F3d at 154, the Third Circuit explained that incorporating the affidavit at issue could have been "accomplished by simply adding 'see attached affidavit' in the appropriate section[.]' "