*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KUMARA K. HUBBERT,

        Defendant-Appellant.

UNPUBLISHED
December 04, 2025
9:31 AM

No. 369097
Wayne Circuit Court
LC No. 98-013443-02-FC

Before: K. F. KELLY, P.J., and BORRELLO and CAMERON, JJ.

PER CURIAM.

In 2000, a jury convicted defendant of second-degree murder,[1] MCL 750.317; assault with intent to rob while armed, MCL 750.89; and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to concurrent prison terms of 40 to 60 years for the second-degree murder conviction and 5 to 15 years for the assault with intent to rob while armed conviction, to be served consecutively to a two-year term of imprisonment for the felony-firearm conviction. Defendant now appeals by delayed leave granted[2] the opinion and order denying his motion for relief from judgment. We reverse the trial court order denying defendant's motion for relief from judgment, vacate defendant's sentence for second-degree murder, and remand for resentencing consistent with *People v Eads*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket No. 357332), lv gtd 25 NW3d 118 (2025).

## I. BASIC FACTS AND PROCEDURAL HISTORY

---

[1] The jury found defendant guilty of second-degree murder as lesser offense to the original charge of first-degree felony murder, MCL 750.316(1)(b).

[2] *People v Hubbert*, unpublished order of the Court of Appeals, entered April 29, 2024 (Docket No. 369097).

Defendant's convictions arise from his participation with codefendant, Hubert Marshall, in the fatal shooting of the victim, Carl Higginson, in November 1998. This Court summarized the relevant factual background in a recent appeal involving Marshall:

> [Marshall's] convictions arose from the shooting death of 24-year-old Carl Higginson on November 9, 1998. At the time, [Marshall] was 17 years' old and [defendant], also known as Kamo, was 16 years' old. Higginson drove into the parking lot of the Southland Apartments in Taylor, Michigan looking for directions. Five people, Jason Cunningham, Donte Kirk, Earl Rhoden, [defendant], and [Marshall] were engaged in conversation as Higginson asked where someone named Danielle lived. [Defendant] directed Higginson to a nearby parking lot. Cunningham saw [Marshall] pass [defendant] a handgun, say he was going "to get him", and observed [defendant] walk in the direction of Higginson's vehicle. Cunningham, Kirk and Rhoden then left the scene by cutting through another apartment building. They heard gunshots which they shrugged off as a normal occurrence in the apartment complex. Both Martina Marchbanks and James Harmer saw two young African-American males, one short and one tall, approach Higginson's vehicle. Marchbanks and Harmer called 911 after they witnessed the taller of the two males raise an arm and shoot into Higginson's vehicle.
>
> On November 10, an anonymous tip and a call from Cunningham led to [Marshall's] and [defendant's] arrest. During his interrogation, [Marshall] provided a written statement where he confessed to having shot Higginson by mistake. A search of [Marshall's] bedroom revealed a .25 caliber handgun that the prosecution's firearms expert opined was the same gun responsible for the five spent cartridges at the scene of the shooting. [Marshall] was charged with felony murder, assault with intent to rob while armed, and felony firearm. [Marshall] was tried jointly with [defendant] before separate juries. [*People v Marshall*, unpublished per curiam opinion of the Court of Appeals, issued October 22, 2020 (Docket No. 345927), pp 1-2.]

In January 2000, following a jury trial, defendant was convicted of second-degree murder, assault with intent to rob while armed, and felony-firearm. In February 2000, the trial court sentenced defendant as noted above, departing upwards from defendant's recommended sentencing guidelines range of 10 to 25 years' imprisonment.

Defendant thereafter appealed his convictions and sentences, which this Court affirmed in 2002. See *People v Hubbert*, unpublished per curiam opinion of the Court of Appeals, issued December 3, 2002 (Docket No. 226318), p 1. Notably, defendant argued that the trial court made an improper "finding at sentencing that [defendant] was actually guilty of felony-murder, even though the jury found him guilty only of the lesser offense of second-degree murder." *Id*. at 5. In rejecting defendant's argument, this Court reasoned that "the trial court's sentencing decision was based only on the facts of the charged offense," and that the trial court was permitted to consider whether defendant committed a more serious offense during sentencing. *Id*. The Michigan Supreme Court subsequently denied defendant's delayed application for leave to appeal. *People v Hubbert*, 468 Mich 940 (2003).

In 2020, codefendant Marshall appealed by right his own convictions and sentences of 46 to 70 years' imprisonment for second-degree murder, 5 to 15 years' imprisonment for assault with intent to rob while armed, and two years' imprisonment for felony-firearm. *Marshall*, unpub op at 1. This Court vacated Marshall's sentence for second-degree murder and remanded for resentencing, reasoning that the sentencing court was required to consider the attributes of youth as described in *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), when evaluating the sentencing considerations announced in *People v Snow*, 386 Mich 586; 194 NW2d 314 (1972). *Marshall*, unpub op at 6. On remand, Marshall was resentenced to 18 to 30 years' imprisonment for his second-degree murder conviction and discharged on March 11, 2024.[3]

In June 2022, defendant, *in propria persona*, moved for relief from judgment and for an evidentiary hearing to address claims of ineffective assistance of counsel. Defendant argued that his sentence for second-degree murder was invalid because the trial court failed to evaluate his youth, as described in *Miller*, in the context of the *Snow* factors. He also contended that his sentence was invalid because the trial court improperly considered his conduct to amount to felony murder, an offense that defendant was acquitted of. In July 2023, the trial court denied defendant's motion, reasoning that he failed to establish good cause by demonstrating ineffective assistance of counsel. This appeal ensued.

## II. STANDARDS OF REVIEW

This Court "review[s] a trial court's decision on a motion for relief from judgment for an abuse of discretion and its findings of facts supporting its decision for clear error." *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or makes an error of law." *Id*. at 628-629 (citations omitted). Clear error occurs "if, after a review of the record, this Court is left with a definite and firm conviction that a mistake was made." *People v Meeker*, 340 Mich App 559, 563; 986 NW2d 622 (2022).

This Court also reviews a trial court's sentencing decisions for an abuse of discretion. *People v Posey*, 512 Mich 317, 325; 1 NW3d 101 (2023). A trial court abuses its discretion if the sentence imposed is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 460; 902 NW2d 327 (2017) (quotation marks and citation omitted).

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). This Court reviews for clear error a trial court's factual findings, and questions of constitutional law are reviewed de novo. *Id*. at 188.

## III. ANALYSIS

---

[3] See Michigan Department of Corrections, Offender Tracking Information System ("OTIS") <https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=165860> (accessed November 5, 2025).

Defendant argues that the trial court erred by denying his motion for relief from judgment on the basis that he failed to establish good cause under MCR 6.508(D)(3)(a), and that he is entitled to resentencing for his second-degree murder conviction. We agree.

A defendant who files a motion for relief from judgment bears the burden of establishing entitlement to the relief requested. MCR 6.508(D). Relief is not proper if a defendant "alleges grounds for relief that could have been previously raised, unless the defendant demonstrates both good cause for failing to raise such grounds earlier as well as actual prejudice." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018). See also MCR 6.508(D)(3)(a) and (b). The requirement of good cause can be "established by proving ineffective assistance of appellate counsel . . . or by showing that some external factor prevented counsel from previously raising the issue." *People v Reed*, 449 Mich 375, 378; 535 NW2d 496 (1995) (citation omitted).

While defendant raised a sentencing issue in his initial appeal, it was not related to the issues he asserted in his motion for relief from judgment, which alleged error based on the trial court's failure to apply the *Snow* factors or consider his juvenile status at sentencing. See *Hubbert*, unpub op at 5. Because defendant could have raised these issues in his direct appeal, under MCR 6.508(D)(3), he must establish good cause for his failure to do so and actual prejudice. On appeal, defendant maintains that he can establish good cause through ineffective assistance of counsel, and that the trial court made improper factual findings in the absence of an evidentiary hearing.

We are not persuaded by defendant's ineffective assistance of counsel arguments. In determining that defendant failed to establish good cause, the trial court stated that "[a]ppellate [counsel] cannot be ineffective for failing to raise an issue that was unlikely to succeed on appeal or choosing to focus on arguments that had a greater likelihood of success." While defendant characterizes this statement as an improper factual finding, we note that the trial court's observation is merely a statement of law. See *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014) ("Counsel is not ineffective for failing to advance a meritless position or make a futile motion.").

Further, the trial court did not err by determining that defendant could not prevail on his ineffective assistance of counsel claim. Defendant's direct appeal was resolved in 2002. See *Hubbert*, unpub op at 1. The relevant caselaw on juvenile sentencing, beginning with *Miller*, did not develop for several years after defendant's direct appeal. Given that caselaw at the time did not explicitly direct sentencing courts to consider a defendant's juvenile status, appellate counsel's failure to raise the issue in defendant's initial appeal did not fall below an objective standard of reasonableness under the prevailing professional norms at the time. See *People v Uphaus*, 278 Mich App 174, 186; 748 NW2d 899 (2008) ("[T]he test for ineffective assistance of appellate counsel is the same as that applicable to a claim of ineffective assistance of trial counsel. Hence, defendant must show that his appellate counsel's decision . . . fell below an objective standard of reasonableness and prejudiced his appeal.") (citation omitted).

However, ineffective assistance of counsel is not the only method of demonstrating good cause. Good cause may also be established "by showing that some external factor prevented counsel from previously raising the issue." *Reed*, 449 Mich at 378. Notably, in *Eads*, ___ Mich App at ___; slip op at 5, this Court considered whether a defendant established good cause in support of a juvenile-offender sentencing challenge, holding that "the fact that [the defendant's]

-4-

direct appeal occurred well before *Miller* and its progeny came into being is enough in itself to establish good cause under MCR 6.508(D)(3)(a) for failing to raise the challenge at that time." Therefore, while defendant cannot demonstrate good cause on the basis of ineffective assistance of counsel, good cause is established based on the recent changes in the law with respect to the sentencing of juvenile offenders.

In order to show that he is entitled to resentencing, however, defendant must also demonstrate actual prejudice. In the context of a challenge to a sentence, a showing of "actual prejudice" means that defendant must establish that his sentence is invalid. MCR 6.508(D)(3)(b)(*iv*). Under the principles announced in *Eads*, we agree that defendant's second-degree murder sentence is invalid and that he is entitled to resentencing.

In *Eads*, ___ Mich App at ___; slip op at 1, this Court held that a term of 50 to 75 years' imprisonment for a second-degree murder conviction of a juvenile offender constituted an unconstitutional and disproportionate sentence. The *Eads* Court noted that the defendant was effectively serving a life sentence, which was defined by the United States Sentencing Commission to be approximately 39 years or more. *Id*. at ___; slip op at 9. Additionally, the defendant was not subject to the same procedural safeguards provided to individuals convicted of the more serious offense of first-degree murder, who "by default, could not receive a term-of-years sentence with a minimum higher than 40 years or a maximum higher than 60 years," under MCL 769.25a(4)(c). *Id*. at ___; slip op at 11.

The Court emphasized that under *Snow*'s proportionality factors, sentencing courts must consider the mitigating effects and attendant characteristics of a defendant's youth. *Id*. at ___; slip op at 14. See *Snow*, 386 Mich at 592 (noting four basic considerations for determining an appropriate sentence including, "(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses"). The *Eads* Court also reasoned,

> As previously detailed, Eads, despite his juvenile status and all that has now been recognized to come with it, received a sentence for second-degree murder that would require him to outlive his life expectancy before even becoming eligible for parole and would deny him a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. Indeed, the sentence is, in purpose and effect, even more severe in some respects than the life-sentence alternative that our Supreme Court has now deemed so disproportionate as to be categorically unconstitutional for juvenile offenders such as Eads. We cannot conclude that such a sentence nonetheless meets our state's proportionality requirement. [*Eads*, ___ Mich App at ___; slip op at 14-15 (citation omitted).].

The Court further concluded that the trial court failed to "consider Eads's youth and its attendant characteristics as potentially *mitigating* factors" when imposing its sentence. *Id*. at ___; slip op at 15.

The principles announced in *Eads* apply to defendant's sentence for second-degree murder. The trial court sentenced defendant to 40 to 60 years' imprisonment. Although this is slightly less than the term of 50 to 75 years at issue in *Eads*, defendant's sentence is still lengthy enough to

effectively be a life sentence. *Id.* at ___; slip op at 9 (noting that a life sentence is defined as approximately 39 years or more). Further, defendant's sentence for second-degree murder is equivalent to the maximum default sentence for a juvenile who committed first-degree murder, a crime of which defendant was acquitted. *Id.* at ___; slip op at 11.

It is also clear from the record that the trial court did not consider defendant's juvenile status and the mitigating factors of his youth during sentencing. Rather, the trial court's statements focused primarily on the nature of the offense, noting that it was a "heinous," "cold-blooded," and "calculated" crime. The trial court also relied heavily on the fact that defendant lied regarding his involvement in the shooting and that his explanation of his involvement evolved throughout the case, but did not consider this behavior in light of the mitigating factors of youth announced in *Miller*, 567 US at 471 (noting the "significant gaps" between adults and juveniles for the purposes of sentencing).

The result of codefendant Marshall's appeal further demonstrates that defendant's sentence is invalid. With regard to Marshall's second-degree murder sentence, this Court directed the trial court to "properly balance the objectives articulated in *Snow* which will necessitate consideration of the distinctive attributes of defendant's youth." *Marhsall*, unpub op at 8. On remand, Marshall was resentenced to 18 to 30 years' imprisonment and discharged on March 11, 2024, while in contrast, defendant's earliest release date is May 28, 2036.[4] Defendant therefore has established that his sentence is invalid and that he is entitled to resentencing, consistent with the principles outlined in *Eads* and *Snow*.

Defendant lastly contends that on remand, the trial court should be instructed to follow the rule announced in *People v Beck*, 504 Mich 605, 609; 939 NW2d 213 (2019), that trial courts may not consider conduct that a defendant was acquitted of during sentencing. We disagree.

In *Beck*, the Michigan Supreme Court held that "[o]nce acquitted of a given crime, it violates due process to sentence the defendant as if he committed that very same crime." *Id.* Recently, this Court in *People v Motten*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363044); slip op at 1, clarified "that *Beck*'s holding is not retroactive on collateral review." Notably, "a collateral attack occurs whenever a challenge is made to a judgment in any manner other than through a direct appeal." *People v Howard*, 212 Mich App 366, 369; 538 NW2d 44 (1995).

Defendant argues that—despite *Motten*'s holding that *Beck* does not apply on collateral review—this Court should instruct the trial court not to consider acquitted conduct during sentencing. He bases this argument in part on the fact that this Court provided such an instruction when remanding Marshall's sentence. See *Marshall*, unpub op at 8. While unpublished opinions may be persuasive, they are not binding. *People v Green*, 260 Mich App 710, 720 n 5; 680 NW2d 477 (2004). Further, *Motten* was decided after this Court remanded Marshall's sentence. Because

---

[4]     See     Michigan     Department     of     Corrections,     OTIS <https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=305277>     (accessed November 5, 2025).

defendant has exhausted his direct appeal and is collaterally challenging his sentence, *Beck* does not apply retroactively and an instruction regarding *Beck* is not warranted on remand.

In conclusion, defendant's term-of-years sentence of 40 to 60 years' imprisonment for second-degree murder is invalid and he is entitled to resentencing, consistent with *Eads*. We reverse the trial court's order denying defendant's motion for relief from judgment, vacate defendant's sentence for second-degree murder, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello